## PRATT *against* ALLEN. (a)

| 13 | 119 |
| 68 | 149 |
| --- | --- |
| 13 | 119 |
| 69 | 74 |
| 69 | 586 |

The constitution of the *United States* is a *grant* of powers where they did not before exist; but the constitution of this state is a *limitation* of powers already existing, leaving the legislative department, subject to the limitations specified, as it found it.

Where the constitution of a state requires a thing to be done generally, it is the right and duty of the legislature to prescribe the manner in which such constitutional provision shall be carried into effect.

Where an amendment of the constitution of this state providing for the election of sheriffs by the people, directed also, that this should be done *in such manner as should be prescribed by law;* it was held, that this clause did not limit the exercise of power on this subject to a legislature convened after the amendment was consummated.

It is no objection to a legislative act, prescribing the time and manner of holding such election, that it was passed before the amendment was consummated; or that it was to depend on a future contingency, not within the controul of the legislature.

The clause in the 6th section of the act of *May,* 1838, providing for the election of sheriffs by the people, declaring that the persons then holding the office of sheriff in the several counties, should hold the same until the 1st of *June,* 1839, *and no longer,* unless elected by the people, was a legal and effective

(a) This case originated in *Hartford* county, but was argued at *Litchfield,* partly for want of sufficient time in the former county, and partly to have a full court to consider and decide it; as it was understood, that Judge SHERMAN would take his seat on the Bench, (as he did) at the term in the latter county.

*Hartford,
June, 1839.*

Pratt
*v.*
Allen.

removal from office, after the 1st of *June*, 1839, of those sheriffs, who were not so elected by the people.

The fact that the office of sheriff was not vacant at the time of the first election of sheriffs by the people, in *April*, 1839, under the amendment of the constitution, did not affect the validity of that election.

Where the General Assembly of this state, in *May*, 1838, removed certain sheriffs from office after the 1st of *June*, 1839 ; and in *May*, 1839, the General Assembly passed an act confirming such removals ; it was held, that the former act was not invalid, because it was to operate in future ; nor because there was another regular session of the legislature before the removals were to take effect; nor because several removals were to be effected, by one legislative act.

Therefore, the act of *May*, 1838, providing for the election of sheriffs by the people, was a constitutional and valid law ; and the removals which it purported to effect, and the elections which took place pursuant to it, were legally made.

THIS was a writ of *habeas corpus*, brought by *George Pratt* against *Gilbert Allen*, returnable to Ch. J. *Williams*, and by him submitted to this court for their advice.

*Pratt* was arrested by *Allen*, claiming to be and acting as sheriff of the county of *Hartford*, by virtue of an execution, duly issued and directed to the sheriff of that county; and it was admitted, that *Pratt* was legally held in custody, if *Allen* was sheriff of the county. It was further admitted, that he was duly chosen and was legally sheriff, if the act under which he was elected, was valid, or if the proceedings were made valid, by the act of *May*, 1839.

By the constitution of this state, a sheriff was to be appointed in each county, to hold his office for three years, removable by the General Assembly. In *May*, 1837, *Ansel Humphreys* was elected sheriff of *Hartford* county, by the legislature, for the term of three years. At the same session, the house of representatives proposed the following amendment to the constitution: " That a sheriff shall be appointed in each county, by the electors resident therein, in such manner as shall be prescribed by law, who shall hold his office for the term of three years, removable by the General Assembly." In *May* following, this amendment was sanctioned, by more than two thirds of each house of the General Assembly, and submitted to the people in *October* following, when it was finally adopted. In anticipation of that event, the General

Assembly, in *May*, 1838, passed an act, (*a*) providing, that in case this amendment should be adopted, by the people, at the annual meeting in *April*, 1839, the electors in their several counties should proceed to the choice of sheriffs, with directions for conducting said election. This act also provided, that the persons then holding the office of sheriff in the different counties, should hold and exercise the same until the 1st day of *June*, 1839, and no longer, unless elected by the people. And in *May*, 1839, the legislature passed an act, (*b*) confirming in office those who had been elected sheriffs under that act, and removing, by name, such of the former sheriffs as were not so elected, by the people.

*Hartford,*
June, 1839.

Pratt
*v.*
Allen.

(*a*) The title of the act referred to, is, " An Act providing for the election of sheriffs by the people," and was approved *May* 31, 1838. The 1st section provides, " That in case of the adoption of the proposed amendment to the constitution of this state, providing 'that a sheriff shall be appointed in each county, by the electors therein, in such manner as shall be prescribed by law, who shall hold his office for three years, removable by the General Assembly, and shall become bound, with sufficient sureties, to the treasurer of the state for the faithful discharge of the duties of said office,' the electors in each town in this state shall, on the first *Monday* in *April* next, and on the first *Monday* of *April*, in every third year thereafter, unless otherwise hereinafter provided, proceed to the choice of a sheriff for the county in which such town is situated, in the same manner as the governor, lieutenant-governor, and other state officers are now chosen."

The 3rd section provides, " That the person so elected shall, from and after the 1st day of *June* next thereafter, on complying with the provisions of the act entitled 'An Act relating to Sheriffs,' hold and exercise the office of sheriff in the counties for which they are severally declared to be elected, with all the powers and duties, and under all the liabilities now appertaining to said office."

*Sec.* 5. " Whenever any sheriff shall die or resign, the governor for the time being shall forthwith fill the vacancy occasioned thereby, in accordance with the provisions of the constitution."

*Sec.* 6. " The persons who now hold the office of sheriff in the different counties, unless otherwise removed, shall hold and exercise the same until the 1st day of *June*, 1839, and no longer, unless elected pursuant to the provisions of this act, by the people of their respective counties; and all laws regarding sheriffs not inconsistent with this act, and all laws regarding the powers and duties of deputy-sheriffs, shall remain in force."

(*b*) This act or resolve was as follows : " Whereas in pursuance of the amendment to the constitution of this state, adopted by the people thereof, in *October* 1838, providing that a sheriff shall be appointed in each county, by the electors therein, in such manner as shall be prescribed by law, who shall hold his office for three years, removable by the General Assembly, and shall become bound, with sufficient sureties, to the treasurer of the state, for the faithful discharge of the duties of said office ; and in pursuance of the act entitled ' An Act providing for the election of sheriffs by the people,' the following named persons have been elected to the office of sheriff in and for the several counties in this state, *viz.* for the county of *Hartford, Gilbert Allen;* for the county of *New-Haven, Charles W. Curtiss;* for the county of *Fairfield, Starr Ferry;* for the county of *New-London, Alexander Stewart;* for the county of *Windham, John Gallup,* 3rd.; for the county of *Litchfield, Albert Sedgwick;* for the county of *Middlesex, Linus Coe;* for the county of *Tolland, Simon House;* to hold their offices in their respective counties aforesaid, from and after the 1st day of *June,* 1839. It is therefore,

*Resolved and declared, by the Senate and House of Representatives in*

*Toucey*, for the petitioner, contended, 1. That the General Assembly has no power to appoint a sheriff since the amendment of the constitution adopted in *October*, 1838.

2. That the old sheriffs were in office until *June*, 1839. The amendment does not abolish the office of sheriff, or change the term. It only changes the appointing body. It contains no repealing clause : and therefore, it varies the original constitution only so far as the latter is inconsistent with the former. The act of 1838 declares, that the old sheriffs shall hold their offices until the 1st day of *June*, 1839, unless otherwise removed. They were, therefore, in office, by virtue of the original appointment. If not, there were no sheriffs in the state from *October*, 1838, to *June*, 1839 ; and all their acts were void.

3. That the General Assembly of *May*, 1839, alone had the power to remove a sheriff, who was in office until the 1st of *June*, 1839. In the first place, every General Assembly has the entire constitutional power of removal, unabridged. It is a continuing power always perfect. Secondly, no General Assembly has any power or jurisdiction over an act of removal, which is to take effect during the constitutional term of a succeeding or future General Assembly. Thirdly, each house, in regard to all removals, which are to take effect during its existence, has a negative upon the other, which cannot be taken away.

4. That the act of 1838, abridging the constitutional term of sheriffs, was void *as a law*.

5. That the act of 1838 did not constitute *a removal*. First, because it was, in form and substance, a *general law*. Secondly, every law abridging the constitutional term, would, by construction, be a removal, and the constitutional provision

General Assembly convened, That the several persons holding the office of sheriff in the counties aforesaid, at the time of the adoption of the amendment aforesaid, to the constitution of this state, and who have not been since elected by the people, in pursuance of the provisions of the act aforesaid, *viz. Ansel Humphreys*, of *Hartford* county, *Samuel Cook*, of *New-Haven* county, *Samuel Beardsley*, of *Fairfield* county, *Hezekiah Olney*, of *Windham* county, and *Carlos Chapman* of *Tolland* county, were, by reason of said amendment, and of the act aforesaid, removed from their respective offices aforesaid, and have no authority to exercise the duties from and after the 1st day of *June*, 1839; and they are declared to have been and hereby to be severally removed therefrom ; and the said election of the said *Gilbert Allen*, as sheriff of *Hartford* county, *Charles W. Curtiss*, as sheriff of *New-Haven* county, *Starr Ferry*, as sheriff of *Fairfield* county, *Alexander Stewart*, as sheriff of *New-London* county, *John Gallup*, 3rd. as sheriff of *Windham* county, *Albert Sedgwick*, as sheriff of *Litchfield* county, *Linus Coe*, as sheriff of *Middlesex* county, and *Simon House*, as sheriff of *Tolland* county, are hereby confirmed."

would be rendered nugatory. Thirdly, a removal is, necessarily, a direct act *in personam ;* not an act of legislation, but an exercise of *executive* power, wherever vested. It is more difficult to be accomplished than a legislative act ; and that is the security intended by the constitution. Fourthly, the removal fell exclusively within the province of the next legislature.

*Hartford,*
*June, 1839.*

Pratt
*v.*
Allen.

6. That of the two sets of sheriffs, one only could be in office ; the other was out ; and the resolution of 1839 could not, by possibility, have any effect, except to create a vacancy, by removing the constitutional incumbent.

7. That such vacancy could be filled only by a new election. The legislature having no power of appointment, could not create a vacancy, and then transfer to it a person not chosen to fill it.

8. That the legislature of *May,* 1838, had no power to prescribe the mode of electing sheriffs by the people. They had no legislative power over the subject. Such an election,—and every mode of it,—was interdicted by the constitution, until *October,* 1838. The amendment then adopted conferred a future power only, by the words " in such manner as *shall be* prescribed by law."

*W. W. Ellsworth,* contra, replied to the several positions taken by the counsel for the petitioner. As most, if not all, the topics discussed, and the considerations urged, by him, are embraced in the following opinion of the court, it is unnecessary to detail them here.

WILLIAMS, Ch. J. The questions arising upon the facts in this case, were presented to this court, not so much on account of any doubts in the mind of the Judge before whom the writ was returnable, as because it was requested by the counsel for the prisoner, and because of the importance of the result ; as in one event, it might affect the service of process almost throughout the state, and leave most of the counties destitute of any executive county officers.

The questions we propose to consider, are, whether the act of *May,* 1838, was constitutional, and the elections under it valid ? For, with the views we have taken of that act, it will become unnecessary to consider what effect the act of *May*

*Hartford,*
*June, 1839.*

Pratt
*v.*
Allen.

1839 might have upon the situation of the newly elected sheriffs. It is not denied, that it effectually removed the former sheriffs. The power of appointing sheriffs, at first given to the legislature, being apparently about to be removed, the Assembly of 1838, in reference to that event, vacated the offices of the then sheriffs after the 1st of *June*, 1829, and directed and regulated the time and manner of filling them, if this amendment should be adopted. As the electors' meeting was not to be held until *October*, and as the Assembly would not meet again until the next *May*, and the annual meeting of the electors for state officers was in *April;* and as the Governor could not fill up the vacancies, which might occur in the office, in some of the counties, in the *Spring* of 1839; and as the legislature could not do it, after the amendment was adopted; there must either have been a special meeting of the legislature after the amendment was adopted, before the electors' meeting in *April*, or there must have been a special electors' meeting, during the session of the legislature, or some of the counties must have been without a sheriff, unless provision was made by the act of 1838. To provide for this event, and, at the same time, to give immediate effect to this alteration in the constitution, this act was passed. And now, it is claimed, that that legislature had no power to pass such an act. We have listened, with attention, to the ingenious arguments addressed to us in support of this position; but we are not convinced that they are well founded.

The objections are, that the legislature could not remove the sheriffs then in office, in the manner they attempted to do, and so there was no vacancy to be filled; and if they could, that the legislature of 1838 could not prescribe the manner of filling it. As the last objection, if well founded, would make it unnecessary to consider the other, this will first be considered.

The objection is, that as the amendment giving the election of sheriffs to the people, also directs, that such election shall be made, in such manner as shall be prescribed by law, the Assembly must derive their power from this amendment; and as the act of *May*, 1838, was prior to the final adoption of the amendment by the people, it was prior to the existence of power in the Assembly, and so the act was void: in other words, that the amendment was a grant of power to the legis-

lature to legislate upon this subject; and that until the amend-ment received its consummating act, by the vote of the people, no power was conferred by it upon the legislature. The objection proceeds upon the assumption that the constitution of this state, like that of the *United States*, confers upon the legislative department all the power it possesses; whereas the fact is not so. The constitution of the *United States* is a *grant* of powers, where they did not before exist: the constitution of this state is a *limitation* of powers already existing. The former enumerates specifically the powers which it grants, with a general power to carry into effect what was specifically granted. The latter, so far as it respects the legislature, is conversant principally with its organization, the authority of its separate branches, and the privileges of its members. But we look in vain for the character of its legislative acts any further than as they are, in some measure, restrained, by the bill of rights. In short, with few limitations, it left the legislative department as it found it. *Starr* v. *Pease*, 8 *Conn. Rep.* 548. And no duty could be more imperative for legislators sworn to support the constitution, than to make laws to carry that constitution into effect. And as constitutional provisions are usually conversant only about general principles, it must be the duty of the legislature to see to the details necessary to carry into effect such provisions; and this, whether an amendment adopted expressly enjoined it or not. And we find, that in some amendments adopted, an express provision has been made to govern the legislature; in another, it has been omitted. An instance to exemplify the former, occurred in the amendment of 1836, when the mode of voting for state officers was authorised to be changed; where power was expressly given to the Assembly to enact laws prescribing the order and manner of voting. But in another amendment, giving to the people the election of comptroller, nothing is said of any thing to be done by the Assembly. But the Assembly, by the act of *May*, 1836, prescribed the manner in which the elections for all those officers should be conducted, as well where the power was not given, as where it was expressly given. And the rule is the same in private corporations. They have power, by their by-laws, to regulate the manner of their elections, if they do not infringe their charter. *Newling* v. *Francis*, 3 *Term Rep.* 189. 198. It is true, that until the people had power to elect a

*Hartford,* June, 1839.

Pratt
*v.*
Allen.

sheriff, any act passed by the legislature, directing how they should regulate their votes in such election, would have been frivolous and invalid, not because the legislature had not the power to pass acts regulating elections, but because, as it respects this office, there could be no election by the people. But because the constitution thus indirectly restrained the operation of such an act, would it follow, that when this constitutional difficulty was removed, such an act, made for the very purpose of meeting this new provision of the constitution, would also be invalid? The act is not intended to, nor does it, oppose any existing article in the constitution; but it is intended to meet and accord with its proposed substitute. We cannot doubt that it is constitutional, unless indeed this amendment restrains the power otherwise existing in the legislature.

Is there, then, in the amendment itself, any thing limiting or restraining the power, which the legislature otherwise possesses upon this subject? The election is to be conducted in such manner as *shall be* prescribed by law. It is claimed, that these words must be so construed as to limit this power to some legislature to be convened *after* this amendment is consummated: in other words, that the phraseology of this amendment is such as to take from the legislature the power they before possessed upon this subject, and confine it to some future legislature. It would seem, that if those who proposed such an amendment intended thereby to take from the legislature an existing power, they would have used language somewhat more explicit; more especially, when no possible object can be discerned for such a limitation.

But when we find, that similar language had been inserted in an amendment very recently adopted, to which a practical construction had been given, it would greatly strengthen this view of the case. In *May*, 1835, the house of representatives proposed an amendment that the electors might vote for Governor and other state officers successively, (as they must, by the constitution of 1818,) or for any number at one time; and the General Assembly shall have power to enact laws regulating and prescribing the power of voting. In *May* following, the General Assembly, by the constitutional majority, sanctioned this amendment, and submitted it to the people; and at the same session, that legislature passed a law to go into effect, if this amendment was adopted, regulating the manner of voting,

&c. ; under which law all elections have since been held. With this precedent before them, can there be a doubt as to the *intent ?* The only distinction attempted between this case and that, is, that there the power to vote and the manner are both contained in the amendment, and here the power is given, and the manner is left to the legislature. In both cases, something was to be done by the Assembly. In both cases, it was done by the Assembly existing before the final adoption of the amendment.

*Hartford,*
June, 1839.
———
Pratt
*v.*
Allen.

In addition to this, taking into view another fact, that the Assembly, who, by an immense majority, ratified this amendment, and submitted it to the people, was the same body who also passed the law in question ; and that with all these facts before them, this amendment was adopted by the people ; there cannot remain a particle of doubt as to the intent.

The inquiry then remains, whether the words used are such as to counteract this intent ? Sheriffs shall be appointed by the people, " in the manner which *shall be prescribed* by law ;" not in the manner which a future legislature, or even any legislature shall prescribe ; but in a manner which shall be prescribed by law. Now, when we consider, that a constitution generally only settles principles, and leaves the details to be settled by ordinary legislation, we could hardly expect, that in such an amendment any particular legislature should be pointed out to whom the details were to be committed, or that the great object was to be defeated, by minute criticism upon words. The great principle is clearly settled. The people are to elect the officer. The manner is left for ordinary legislation ; and whether the words used are, *in the manner which shall be prescribed by law,* or *in the manner which the law shall prescribe,* or *in the manner prescribed by law,* it seems to us it means substantially the same thing.

The constitution of the *United States* provides, that the times, places and manner of choosing senators and representatives shall be prescribed by the legislatures of the several states. Now, suppose after the adoption of the constitution, by this state, and before nine states had adopted it, the legislature had passed an act providing for the times, places and manner of choosing such officers, could it have been seriously contended, that an election holden under such act would be void ?

But it has been said, that this act was void, because it was made to depend upon a future contingency, and was thus beyond the controul of the legislature. A similar argument was used before the supreme court of the *United States*, with regard to a law of Congress making the revival of the non-intercourse act dependent upon certain acts of foreign governments evinced by the proclamation of the president. It was contended, in that case, that this was a transfer of legislative power to the executive, and was giving the president's proclamation the force of law. But the court decided, that Congress might exercise their discretion upon this subject, expressly or conditionally, as their judgment should direct. *Cargo of Brig Aurora* v. *United States*, 7 *Cranch* 382. If, then, Congress could authorise the president, by his proclamation, to revive that act, surely our legislature can make this act to depend upon the will of the people, expressed upon a constitutional question.

So too, when the amendment of the constitution of the *United States* relative to the choice of president, was pending, and also an election of president, Congress passed an act, providing, that whenever that amendment should be adopted, the secretary of state should give notice to the executive of every state, who should notify the electors of his state; and these electors were to vote, in the mode thereby prescribed. But as this ratification might not be known in season to all the electors, it was also provided, that in such cases, the electors might vote in conformity to the original constitution, and also in conformity to the amendment; and when the votes were counted, those certificates only should be opened, which contained the votes given in conformity to the constitution, as it was in force on the day fixed by law, at the time of the meeting of the electors. *Act of March* 26th, 1804.

Another objection to this act, was, that when the votes were given for sheriff, or were directed to be given, the office of sheriff was not vacant. If by this it is intended there must be an actual vacancy existing, before an election can be had for the office, it is opposed to the course of practice in our country, and is almost inconsistent with the continued organization of our government. Most of our state officers, legislative, executive and judicial, have been appointed with reference to a vacancy soon to happen. So too have been our senators

usually; and so were our representatives to congress, as long as our state elections were semi-annual. But if nothing more is meant, by this objection, than that when a vacancy will not occur until after a new legislature shall have convened, and that in such a case an appointment by a former legislature would be illegal, as if a senator should, by the legislature of 1838, be appointed to fill a vacancy to occur in 1840, and the legislature of 1839 should appoint another person,—it is enough for us to say, that a discussion of that question will reflect but little light upon this; nor is this the time or place to discuss it. In this case, there is no collision in consequence of the acts of different legislatures. But the people have made an election here under the only act made to carry into effect a constitutional change. This argument proceeds upon the supposition that the amendment itself did not, by its adoption, vacate the offices of the then sheriffs,—a proposition which we are not disposed to deny. On the other side, it is contended, that for the purpose of carrying into immediate effect this amendment, and giving uniformity to the tenure of the sheriff's office throughout the state, the General Assembly did create a vacancy, as they had power to do, by declaring that the sheriffs should hold their offices until the 1st of *June*, 1839, *and no longer:* in other words, that they removed them from office after that time, at least such of them as would otherwise have held over that time. That the legislature had the constitutional right to do this, has not been denied. That they intended to exercise this right, cannot be denied. Did they do it?

It is said, that the removal of a public officer is an executive act; and that the executive could not remove in anticipation of his successor; and therefore, the Assembly of 1838 could not remove, to take effect in *June*, 1839. The boundaries between executive and legislative powers are frequently very nice and indistinct. The late Ch. J. *Marshall* says: "The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law. But the maker of the law may commit something to the other departments; and the precise boundary of this power is a subject of delicate and difficult enquiry, into which a court will not enter unnecessarily." *Wayman* v. *Southard*, 10 *Wheat.* 46.

*Hartford,*
June, 1839.

Pratt
*v.*
Allen.

To which department this subject most appropriately belongs, it is not necessary for us to decide, as the same constitution which declares, "that the powers of government shall be divided into three distinct departments, and each confided to a separate magistracy, *viz.* those which are legislative to one, those which are executive to another, and those which are judicial to another," has assigned this power of removal to the legislative department. Whether the power be executive or not, we see nothing to prevent the legislature of 1838 from acting upon it, except that the succeeding legislature might act in some different manner. As this was not done, no question can arise from any collision of powers. And when it appears, that the electors' meetings for the choice of the annual state officers were to be holden before the next session of the legislature, we see nothing contrary to the usual course of proceeding, or tending towards an infringement of the rights of the succeeding Assembly. So far from that, the legislature of 1839, to remove any doubts which might be entertained, passed an act confirming these proceedings.

It is said further, that as sheriffs are to hold their offices for three years, the legislature cannot pass a general law abridging their term of office. It is certainly true, that as the constitution declares, that sheriffs shall hold their offices for three years, the legislature cannot, by a general law, limit the term of office of sheriffs to a less time. But is the law in question of that character? The same instrument, which says, that sheriffs shall hold their offices for three years, also declares, that they shall be removable by the General Assembly. The tenure of their office, then, is three years, unless sooner removed by the General Assembly. In this case, the legislature, in pursuance of the power thus reserved to them, declared, that these sheriffs, holding their offices by the election of the legislature, should continue to hold them for what they deemed a reasonable time after the alteration in the constitution for a new election had elapsed; and that after the 1st of *June,* 1839, they should hold them no longer. Is not this a removal to take effect at that time? The objections are, that it is too general, and is like a law to abridge the term of office; and is to operate only at a future time.

It is to be remarked, that it is not a law regulating the term of future sheriffs. It acts only upon those who were then in

office ; and it intends to act upon them, and to displace them. It is done, indeed, by one act : and this is said to be irregular, because each case should be separately considered. If this were so, could this court know, because these sheriffs were removed by one act, that the cases were not severally considered ; or that the same cause, which required the removal of one, also required the removal of all ? Aside from these considerations, we see nothing in the constitution directing the form or manner in which this power is to be exercised by the legislature.

Upon informations at common law, filed against two or more, the court may exercise a discretion, whether all shall be tried at the same time, or whether separate trials shall be allowed. Here, removals may be made, at the discretion of the legislature ; and can this court say, that because in the excise of that discretion, two or more were ejected, by one act, any constitutional provision is violated ? That each case had received the consideration to which it was entitled, the court is to presume, unless one common reason existed equally applicable to all. But were it otherwise, the Assembly having the power of removal at their discretion, this court could not enquire whether that discretion had been exercised upon proper consideration. Should the president of the *United States*, by one instrument, under his hand, signify his pleasure to remove the collector and the surveyor of a particular port, would that circumstance have any effect upon his act ? Could it be doubted, that they were effectually removed ? The reasons which operated might be very different, in the two cases ; but as the constitution had given the power, and had not prescribed the mode, it must be presumed, that those officers who could be entrusted with the power, might safely be entrusted with the manner of removal.

Another objection was, that the removal was not legal, because the act was to operate at a future time. We believe nothing is more common, where a removal from office is made, in cases other than those founded upon misconduct, that it should be prospective. It is matter of convenience to the incumbent and to his successor. When in *May*, 1835, the commissions of all the notaries public were revoked, the time was fixed to the 20th of *June* then following. And in the case of the removal of the sheriff of *Litchfield* county, some

*Hartford,*
June, 1839.

Pratt
*v.*
Allen.

*Hartford,*
*June, 1839.*
———
Pratt
*v.*
Allen.

future time was fixed.   It was short ; but the principle is the same.   If the legislature may fix a future time for the removal, it would not be for the court to say what that time should be.   The argument has proceeded upon the ground, that such a power might be abused.   And so may any power to which any discretion is annexed.   In this case, the provisions of the constitution prescribing the term of office of sheriffs and their removal by the legislature, are perfectly consistent.   And if the legislature act in accordance with the spirit of the power conferred, they will never exercise the right of removal, without strong reasons.   If they do, they are accountable to another tribunal.   If the legislature shall attempt to encroach upon constitutional restrictions, it will become the solemn duty of the court to declare such an attempt illegal and the act void.   But it is neither the duty nor the wish of this court to controul legislative discretion, nor to correct mistakes which they may be supposed to have made in the exercise of such discretion. For these they are accountable only to their constituents and to God.

We, therefore, advise, that the prisoner should not be discharged.

The other Judges were of the same opinion.

Judgment for defendant.