149 So. 776

## In re OPINIONS OF THE JUSTICES.

## In re INCOME TAX ENABLING ACT.
### No. 28.

Supreme Court of Alabama.
Sept. 30, 1933.

Response to questions propounded by Governor.

Questions propounded by the Governor to the Justices of the Supreme Court, under Code 1923, § 10290.

Questions answered.

To the Honorable Justices of the Supreme Court of Alabama:

Pursuant to the provisions of sections 10290, 10291 of the 1923 Code of Alabama, I shall be glad if you will answer the following inquiries relating to important constitutional questions in connection with the validity of the so-called Income Tax Enabling Act, found in the General Acts of Alabama, Extra Session 1933, page 150, being Act No. 169, approved April 17, 1933:

1. Does said Act, as passed by the Legislature, comply with, and is it in conformity with article 22 of the Constitution of Alabama adopted by proclamation of the Governor, dated August 2, 1933?

2. Does said Act, as passed by the Legislature, offend section 6 of the Constitution of Alabama, or has that Constitutional Section any application thereto?

3. Does said Act, as passed by the Legislature, offend section 22 of the Constitution of Alabama, or has that Constitutional section any application thereto?

4. Does said Act as passed by the Legislature comply with, and is it in conformity with section 45 of the Constitution of Alabama of 1901; or is said Constitutional section 45 applicable thereto?

5. Did the Legislature in passing said Act comply with section 61 of the Constitution of Alabama, or is said Constitutional section 61 applicable thereto?

6. Did the Legislature in passing said Act comply with section 62 of the Constitution of Alabama, or is said Constitutional section 62 applicable thereto?

7. Did the Legislature in passing said Act comply with section 63 of the Constitution of Alabama, or is said Constitutional section 63 applicable thereto?

8. Did the Legislature in passing said Act comply with section 64 of the Constitution of Alabama, or is said Constitutional section 64 applicable thereto?

9. Does said Act as passed by the Legislature offend section 68 of the Constitution of Alabama; or has said Constitutional section 68 any application thereto?

10. Did the Legislature in the passage of said Act comply fully and properly with the provisions of section 70 of the Constitution of Alabama; or has said Constitutional Section any application thereto?

11. Does said Act as passed by the Legislature offend section 71 of the Constitution of Alabama; or has said Constitutional section 71 any application thereto?

12. Was said Act as passed by the Legislature in conformity with section 76 of the Constitution of Alabama?

13. Does said Act as passed by the Legislature offend section 118 of the Constitution of Alabama; or has said Constitutional section 118 any application thereto?

14. Did the passage of said Act by the Legislature of Alabama offend section 122 of the Constitution of Alabama, said Act having been passed at an extraordinary session?

15. Does said Act as passed by the Legislature of Alabama offend section 150 of the Constitution of Alabama; or has said Constitutional section 150 any application thereto?

16. Does said Act as passed by the Legislature of Alabama offend section 211 of the Constitution of Alabama; or has said Con-

stitutional section 211 any application thereto?

17. Does said Act as passed by the Legislature of Alabama offend section 214 of the Constitution of Alabama; or has said Constitutional section 214 any application thereto?

18. Does said Act as passed by the Legislature of Alabama offend section 260 of the Constitution of Alabama; or has said Constitutional section 260 any application thereto?

19. Does said Act as passed by the Legislature of Alabama offend section 281 of the Constitution of Alabama; or has said Constitutional section 281 any application thereto?

20. Under the terms and provisions of said Act as passed by the Legislature, may the income tax therein levied, and authorized be collected for the calendar year 1933, or only after August 2, 1933?

21. May the income derived from such tax, as authorized by said Act and adopted by the Legislature and Constitutional Amendment 23 as adopted by the people, be pledged or held in trust for the payment of warrants of the State of Alabama unpaid and outstanding as of October 1, 1932, and items enumerated in an Act of the Legislature No. 294. being Senate Bill 272, approved November 9, 1932, referred to in the Warrant Act (Acts of the Extra Session of 1933, page 196)?

22. Section 45 of the said Act provides "This Act shall become effective when an amendment to the Constitution authorizing the tax herein provided for has been adopted." Taking this provision into consideration, will the fact that the Act was passed by the Legislature, and approved by the Governor prior to the adoption of the Income Tax Constitutional Amendment affect its validity?

For your consideration in connection with this request for your opinion, I am attaching hereto a copy of the Governor's call convening this extraordinary session of the Legislature.

Very respectfully,

B. M. Miller,
Governor of Alabama.

Response of the Justices.

To His Excellency, Hon. B. M. Miller, Governor of Alabama, Montgomery.

Sir: In answer to your inquiry relating to the so-called Income Tax Enabling Act as set out in the General Acts of Alabama, Extra Session 1933, page 150, No. 169, approved April 17, 1933, we wish to observe that, although you refer to many sections of the Constitution, there is only one feature of your inquiry on which briefs have been submitted attacking the act, and we do not feel called upon to analyze it in connection with contentions not presented to us. We note

that, while the inquiry has been in our keeping several weeks, of which much publicity has been given, and that we have invited briefs pertaining to it from any source, the only attack which has been made involves the single question embraced in the first and seventeenth paragraphs of your request.

Article 22, which is the Income Tax Amendment, was proposed by an Act of the Legislature of Alabama, passed by the House March 23, 1933, and by the Senate April 7, 1933, and proclaimed by you as Governor to have been adopted effective August 2, 1933.

The Income Tax Enabling Act was passed at the same session of the Legislature, and approved by you as Governor April 17, 1933. In section 45 of that act it is provided that it "shall become effective when an amendment to the Constitution authorizing the tax herein provided for has been adopted."

In the case of Eliasberg Bros. Merc. Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A. L. R. 300, it was held that, since income, as a subject of taxation, is property within section 214, Constitution, it was not subject to a rate of taxation in excess of sixty-five one-hundredths of 1 per cent. on its value.

There is no contention that the income tax provided for by the Enabling Act just mentioned, is not in excess of the limitation provided in section 214, Constitution, and void, unless its validity is saved by the amendment, article No. 22, to which we have referred. It is not necessary, therefore, to discuss section 211 in this connection, not mentioned in the Eliasberg Case, supra.

The argument here made is that, since the Legislature had no power to impose a tax on income to that extent, when the Enabling Act was passed and approved, though it did have such right when it became operative, it was void when passed and approved, and that the subsequent effective adoption of article 22 of the Constitution did not validate it.

We concur in the conclusion, if the premise be correct, that the act was void when passed and approved, since article 22 does not expressly validate it.

So that the only question which we need to discuss is whether the Enabling Act was void when passed and adopted, because in violation of section 214 of the Constitution.

The theory on which the contention is made that the act was then void may be expressed in an opinion written by Justice Ellis of Florida in Neisel v. Moran, 80 Fla. 98, 85 So. 346, 352, and which is quoted with approval by Justice Brown of the same court in the same case, as follows: "If the amendment was not a part of the Constitution until that date, then the Legislature had no power prior to that date to bring into existence an act dealing with the subject of the prohibition of the sale of intoxicating liquors, and depend upon an amendment to the Con-

stitution to give vitality to the act. The passage through the Legislature of such an act was without authority. The Legislature had no power to deal with the subject. It was prohibited by the terms of the Constitution from doing so. Such an act would have been void. It would have been nothing more than a blank piece of paper. See Cooley, Const. Lim. 188; Seneca Mining Co. v. Osmun, Secretary of State, 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770."

It also appears that such was the opinion of four justices of that court. But in that case the constitutional amendment was adopted in November, 1918, about a month prior to the passage of the act, which, however, was passed prior to the date on which the amendment became operative, but which provided that it should go into effect on the day on which the amendment became operative. Two of the justices held that, since the people had approved it, the Legislature by that approval had the power to legislate; others of the same court held that such approval gave no right to legislate, and Justice Whitfield argued the question as follows:

" 'A statute has not, ex proprio vigore, any force until it becomes the law of the land, and that is when, by its terms, it takes effect.' Gilbert v. Ackerman, 159 N. Y. 118, 53 N. E. 753, 45 L. R. A. 118, 120; In re Howe, 112 N. Y. 100, 19 N. E. 513, 2 L. R. A. 825; 36 Cyc. 1192, notes 6, 7; City of Davenport v. D. & St. P. R. Co., 37 Iowa, 624; Jackman v. Garland, 64 Me. 133.

" 'A statute passed to take effect at a future day is to be understood as speaking from the time it goes into operation, and not from the time of its passage.' Price v. Hopkin, 13 Mich. 318; Rice v. Ruddiman, 10 Mich. 125; 26 Am. & Eng. Ency. Law (2d Ed.) 565, notes 1 and 2.

" 'No statute has, ex proprio vigore, any force until it becomes the law of the land.' Cargill v. Power, 1 Mich. 369, 370. See, also, Charless v. Lamberson, 1 Iowa, 435, text 443, 63 Am. Dec. 457; State v. Bentley, 80 Kan. 227, 101 P. 1073; Shook v. Laufer (Tex. Civ. App.) 100 S. W. 1042; State v. Williams, 173 Ind. 414, 90 N. E. 754, 140 Am. St. Rep. 261, 21 Ann. Cas. 986; Mills v. State Board of Osteopathic Registration & Examination, 135 Mich. 525, 98 N. W. 19, 3 Ann. Cas. 735, and notes.

" 'Until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the Legislature and approved by the executive has no force whatever for any purpose.' 36 Cyc. 1192, notes 6 and 7; State v. Northern Pac. R. Co., 36 Mont. 582, 93 P. 945, 15 L. R. A. (N. S.) 134, text 138, 13 Ann. Cas. 144.

"The Constitution expressly provides for the enactment of laws to take effect at a subsequent date; and, in the light of reason and of the above authorities, the constitutional validity of a statute should be determined as of the time when the statute becomes operative, not when it was enacted, unless the Constitution forbids the passage of the law at any time. The validity of a statute cannot be tested until it becomes effective or operative. Original article 19 did not forbid the passage of chapter 7736, to take effect when, the article ceased to be organic law. The Legislature may enact any law not forbidden by the Constitution. 12 C. J. 746."

He also cites the cases largely relied on by counsel who have filed brief with us attacking the act here in question, and shows that they are not authoritative because the act they were considering became effective immediately by its terms, and not on or after the operative date of the constitutional amendment.

But the value of that case is principally in the discussion of the general subject by the several justices. It is similar in some respects, as to the legal situation, to Druggan v. Anderson, 269 U. S. 36, 46 S. Ct. 14, 15, 70 L. Ed. 151. The amendment there considered became effective January 16, 1916, but it provided that prohibition there declared should not become operative until after one year. The act of Congress was passed after the ratification of the amendment, but before expiration of the year, but not to go into effect until after the amendment did. The court, in upholding the act, made the incidental observation, not then pertinent, but directly so here, "Indeed it would be going far to say that while the fate of the Amendment was uncertain Congress could not have passed a law in aid of it, conditioned upon the ratification taking place."

While those cases may be differentiated from the one we are considering, their discussions are pertinent.

But there are well-considered cases which may not be so differentiated; and which pursue the line of reasoning adopted by Justice Whitfield of Florida, with additional pertinent discussions. We could merely cite those cases, but we think it appropriate to make some quotations for the benefit of those who may not have the cases available.

In the Arizona case of Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658, 659, without dissent, the writer of the opinion, citing approvingly that of State v. Hecker, 109 Or. 520, 221 P. 808, and quoting from the case of Druggan v. Anderson, supra, gives the following discussion:

"There remain 5 specifications of alleged unconstitutionality, which we will consider in the order which seems most advisable.

The first is that since, at the time of the passage of the act, the Legislature had no power under the Constitution to require an election of remedies in advance of injury, it could not then enact a valid law containing such a provision, which should become· effective upon a future amendment of the Constitution permitting it. Counsel admits that the taking effect of a law may be made to depend on a future contingency, but contends that the act must have been constitutional when passed. The case most directly in point is that of State v. Hecker, 109 Or. 520, 221 P. 808. In that state the Constitution had abolished the death penalty in 1914. In the spring of 1920 the Legislature ordered submitted to the voters a constitutional amendment re-establishing it, and enacted a law providing for the death penalty and the method of carrying it into effect. This act, under the provisions of the Oregon Constitution became a law on April 17th, but its operative effect was expressly suspended by its terms until the adoption of the constitutional amendment. This last was approved by the people in May, and became part of the Constitution on June 18th. The court, discussing the proposition presented here by plaintiff, said:

" 'Chapter 20 was enacted for the sole purpose of prescribing a procedure which should be and could be available only upon the amendment of the Constitution. The purpose was to make chapter 20 operative contemporaneously with, but not before, the amendment of the Constitution. It is our view that chapter 20 is constitutional; and this view, though opposed by the holding in Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867, is supported by Pratt v. Allen, 13 Conn. 119, Galveston, B. & C. N.-G. R. Co. v. Gross, 47 Tex. 428, 436, and State ex rel. v. Kirkley, 29 Md. 85, 104. See, also, 8 Cyc. 770; 12 C. J. 742.'

· "See, also, Boyd v. Olcott, 102 Or. 327, 202 P. 431."

We also quote a portion of the opinion in the case of Pratt v. Allen, 13 Conn. 119, as follows:

"The objection is, that as the amendment giving the election of sheriffs to the people, also directs, that such election shall be made, in such manner as shall be prescribed by law, the Assembly must derive their power from this amendment; and as the act of May, 1838, was prior to the final adoption of the amendment by the people, it was prior to the existence of power in the Assembly, and so the act was void; in other words, that the amendment was a grant of power to the Legislature to legislate upon this subject; and that until the amendment received its consummating act, by the vote of the people, no power was conferred by it upon the Legislature. * * * And no duty could be more imperative for legislators sworn to support the Constitution, than to make laws to carry that Constitution into effect. And as constitutional provisions are usually conversant only about general principles, it must be the duty of the Legislature to see to the details necessary to carry into effect such provisions; and this, whether an amendment adopted expressly enjoined it or not. And we find, that in some amendments adopted, an express provision has been made to govern the Legislature; in another, it has been omitted. * * * It is true, that until the people had power to elect a sheriff, any act passed by the Legislature, directing how they should regulate their votes in such election, would have been frivolous and invalid, not because the Legislature had not the power to pass acts regulating elections, but because, as it respects this office, there could be no election by the people. But because the Constitution thus indirectly restrained the operation of such an act, would it follow, that when this constitutional difficulty was removed, such an act, made for the very purpose of meeting this new provision of the Constitution, would also be invalid? The act is not intended to, nor does it, oppose any existing article in the Constitution; but it is intended to meet and accord with its proposed substitute. We cannot doubt that it is constitutional, unless indeed this amendment restrains the power otherwise existing in the Legislature."

This theory is well supported. Galveston, etc., R. Co. v. Gross, 47 Tex. 428; State v. Kirkley, 29 Md. 85; 12 Corpus Juris, 742.

We cannot concur in the contention that the act purported to legislate on a subject out of its domain. The subject of taxation was unquestionably within its domain, since it was not prohibited by the State or Federal Constitution. If it had attempted to prescribe a tax in excess of the limit fixed in section 214, presently operative, we may concede it would have been void, and not validated by the subsequent amendment. But it prescribed a limit which when operative should not be prohibited.

It is not intended that a Constitution must provide the details for its operation. While it may of course be self-operating, it is primarily intended as a limitation on the power to legislate, otherwise unrestricted and not itself be a legislative body. The Legislature is set up for that purpose. In Alabama it convenes once in four years, unless specially called. It seems to us to be entirely consistent with its powers of legislation, unrestricted except by the Constitution, to enact regulatory and enabling provisions to become effective when an amendment to the Constitution shall remove existing restrictions and in anticipation of such an amendment.

We think it would be unwise, if not in fact folly, to require another session of the Leg-

islature after the adoption of the amendment. It is perhaps not inappropriate also to observe that the Legislature has on two occasions in the past, if not more, enacted statutes in anticipation of and effective upon the adoption of an amendment to the Constitution. The Special School Tax Amendment to the Constitution was proposed by an Act approved March 17, 1915 (Gen. Acts 1915, p. 107). The enabling act to become effective upon the adoption of that amendment was passed by the same Legislature, approved September 10, 1915 (page 360). The highway bond issue of 1921 was authorized by an amendment proposed by an Act approved October 29, 1921 (Acts 1921 [Sp. Sess.], p. 35). The enabling act was passed at the same session of the Legislature, approved October 31, 1921 (page 67), in which it was provided that it should go into effect upon the adoption of the said constitutional amendment.

No one has thought that the contention now made was sufficient to justify a contest of the validity of the school tax or bond issue.

▮ Inherently there is no reason why a statute may not provide that it shall be operative upon the happening of a contingency. Smith v. State, 223 Ala. 11, 136 So. 265; State ex rel. Gaston v. Black, 199 Ala. 321, 74 So. 387; State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. 294; Olmstead v. Crook, 89 Ala. 228, 7 So. 776; 59 Corpus Juris, 1137, 1138, 1156.

▮ Our judgment is that the amendment to the Constitution known as article 22, proposed, by the Legislature of 1933, and adopted as a part of the Constitution, relieved the Legislature of the restrictions of the Constitution so as to permit the tax within the limit there provided, and that, since the enabling act by its terms then became operative, it is to be held as controlled by the restrictions of the Constitution as thus amended, not as theretofore existing.

Respectfully submitted,

JOHN C. ANDERSON,
Chief Justice.

LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
VIRGIL BOULDIN,
ARTHUR B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.

To His Excellency, Hon. B. M. Miller, Governor of Alabama, Montgomery.

Sir: I regret that I am unable to agree with my brothers in the answer to your inquiry.

To my mind, when it is conceded that the Legislature, because of the limitation embodied in the Constitution (section 214), was without power to levy the tax, and that the subsequently adopted amendment does not purport to raitfy and confirm the levy by an express declaration of the amendment to that effect, further inquiry is foreclosed. The act was unconstitutional and void when passed, and, in the absence of express ratification, it is still void.

When the act dealt with by the Supreme Court of Florida in Neisel v. Moran, 80 Fla. 98, 85 So. 346, was passed by the Legislature of that state, the amendment to the Constitution had been duly adopted and had the effect of removing the limitation on the legislative power, with the limitation that legislation thereunder could not be made effective prior to a future date fixed by the amendment.

Practically the same situation was presented in Druggan v. Anderson, 269 U. S. 36, 46 S. Ct. 14, 70 L. Ed. 151.

While the stress of the times and considerations of expediency may urge a liberal application of fundamental principles, yet it is well to remember the language approved by this court more than a half of a century ago, speaking through Stone, J., and later Chief Justice: "Believing, as I do, that the success of free institutions depends on a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for the latitudinarian constructions which are resorted to for the purpose of acquiring power—some evil to be avoided, or some good to be attained, by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influences that constitutions are gradually undermined, and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. * * * If the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary, in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them." Sadler v. Langham, 34 Ala. 311, 335.

What was said in State v. Hecker, 109 Or. 520, 544, 221 P. 808, 816, in respect to the power of the Legislature of that state to enact a statute prior to the adoption of the constitutional amendment, I regard as obiter dictum. Before entering upon the discussion the court held: "This statute may be entirely ignored, for the simple reason that it is nothing more than a repetition of the mandatory language of the organic law. The constitutional amendment of 1920 by its own solemn and mandatory terms makes death the penalty for murder in the first degree, except where the jury recommends life imprisonment; and therefore it was not

necessary for the Legislature to enact chapter 19. If chapter 19 had never been enacted nevertheless the death penalty must, because of the irresistible and compelling power of the Constitution, be enforced in every case of murder in the first degree, unless the jury recommends life imprisonment, and unless it can be said that the mandate of the Constitution cannot be obeyed on account of the want of a lawful procedure for executing the sentence of death."

While the holding in the Arizona court in Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658, may be conceded to be in point as sustaining the majority view, it does not appear from the decision what the constitutional provisions supposed to be affected were, and the court in that case merely adopts the dictum of the Oregon court. Therefore I do not consider this a controlling authority.

Nor is the case of Pratt v. Allen, 13 Conn. 119, applicable. The limitation in the Constitution dealt with in that case was a limitation on the power of the people, not the Legislature, and it was held that the Legislature had the inherent power to regulate elections at the time the act in question was enacted.

It may be conceded that the holding of the Florida court in Neisel v. Moran, 80 Fla. 98, 85 So. 346, and the holding of the United States Supreme Court in Druggan v. Anderson, 269 U. S. 36, 46 S. Ct. 14, 70 L. Ed. 151, are sound, and this is conceded; still they do not sustain the power of the Legislature to pass the act in question. In these cases the amendment had become a part of the organic law before the enactment of the statute.

Respectfully submitted,
JOEL B. BROWN,
Associate Justice.