168 So. 679

## STATE v. WEIL.

### 3 Div. 174.

Supreme Court of Alabama.

May 21, 1936.

Rehearing Denied June 18, 1936.

A. A. Carmichael, Atty. Gen., Frontis H. Moore, Asst. Atty. Gen., and Frank E. Spain and Horace C. Wilkinson, both of Birmingham, for the State.

Weil, Stakely & Cater and Hill, Hill, Whiting & Rives, all of Montgomery, for appellee.

Rushton, Crenshaw & Rushton, of Montgomery, amici curiæ.

BROWN, Justice.

■ The power to levy taxes is not a delegated power; but is an attribute of sovereignty inherent in the state, and is plenary *over persons, franchises, privileges, and property* within its jurisdiction, except as restricted by the limitations imposed by the State Constitution and the Constitution of the United States. Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552; Union Bank & Trust Co. v. Phelps, 288 U.S. 181, 53 S.Ct. 321, 77 L.Ed. 687; Capital City Water Co. v. Board of Revenue of Montgomery County, 117 Ala. 303, 23 So. 970; 26 R.C.L., p. 86, § 63; Id., p. 26, § 12.

■ When the people of Alabama, by the Constitution, ordained that certain institutions are essential parts of the government of the state, and vested in the Legislature, created by the Constitution, this attribute of sovereignty, the Constitution became a command to the representatives of the people in Legislature assembled, to levy such taxes as are necessary to maintain the government of the state and its essential institutions, to the end that we may have a government of law, and not a goverment by men—that justice, domestic tranquillity, and the blessings of liberty may be secured to the people and their posterity in the enjoyment of life, liberty and the pursuit of happiness. Const.1901, § 1.

■ Taxes are a charge by the state—a forced contribution—for the support of such government, laid upon the *persons, property, rights, and privileges* of the people by their common consent, implied by the promulgation and adoption of the Constitution. Perry County v. Selma, Marion & Memphis Railroad Company, 58 Ala. 546, 564; 3 Blackstone's Comm., p. 158; 17 C.J., p. 1376, note [a] (4).

The authority of the Legislature of this state to levy a tax on net incomes has long been recognized, as appears from the following cases: Board of Revenue of Montgomery County v. Montgomery Gaslight Company, 64 Ala. 269; Western Union Telegraph Co. v. State Board of Assessment, 80 Ala. 273, 60 Am.Rep. 99; Capital City Water Co. v. Board of Revenue of Montgomery County, 117 Ala. 303, 23 So. 970; Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300.

In the Montgomery Gaslight Company's Case, supra, it was observed, the court speaking through Justice Stone: "From this resumé of our statutes, it is manifest that, since February 19, 1867, it has been the policy of our legislature to assess and collect taxes on property owned by the taxpayer on the first day of January, and on his *salary, gains and income*, received by him during the preceding year. In this way, it may, and does often happen, that taxes *apparently* double are paid in one year, and rightfully paid, on the same property; once, for the year preceding the assessment, as a gain or profit; and a

second time, as being the owner of it on the first day of the year in which it is assessed. If, in the meantime, it has been changed or converted into some other subject of taxation, of which he is the owner on the first of January, it will be subject to assessment in its changed form. This is not double taxation." (Italics supplied.)

The thought underlying these utterances clearly was that the tax on "gains," "profits," or "income" was not a direct, but at most an indirect, tax on the property, the source of such "gains," "profits," or "income."

In Capital City Water Co. v. Board of Revenue of Montgomery County, 117 Ala. 303, 310, 23 So. 970, 972, the constitutionality of a law levying a tax "on gross incomes," which authorized the deduction of the expense of carrying on the business to ascertain the basis of the levy, reducing the basis of the levy to the net income, was the subject of controversy. In disposing of the case, the court, speaking through Justice Haralson, said:

"The point as to the constitutionality of the statute under which a tax on gross income was imposed, was raised in the case of Western Union Telegraph Co. v. State Board of Assessment, supra [80 Ala. 273, 278, 60 Am.Rep. 99], and after careful consideration its constitutionality was sustained; a decision that found complete support in the previous decision of Lott v. Ross, supra [38 Ala. 156], and we are asked to overrule that case. The suggestion for overruling it, as may be supposed, and any expectation that it might be done, no doubt grew out of the recent decisions of the federal court known as the 'Income Tax Cases' [157 U.S. 429], 15 S.Ct. 673 [39 L. Ed. 759]. It is sufficient to say, however, without approving or disapproving the majority opinions in those cases, that they have little or nothing to do with the correctness of the decision in 80 Ala. They had no reference to an income tax to be levied and paid by the people of the states, under an act of congress for that purpose; and, if the power of congress to impose such a tax be denied, as was there done, *it does not follow that the states might not impose such a tax, as is very often done by them.*

"This point, however, is urged upon the further contention, that the tax imposed in this case is an income tax, susceptible of definite ascertainment as to its amount, and therefore it is *property*. The provision is for a tax of 1 per cent., 'on the gross receipts during each tax year of all cotton pickeries' and other specified businesses, including water works, 'after deducting the expenses of carrying on such business.' The intention of this last clause was in the interest of these different enterprises, that they might not be too heavily burdened in the imposition of a tax on gross receipts, and that each might be taxed on the same equitable basis. The gross incomes of some companies are large, earned by the outlay of very great sums, while with others, such incomes, whether large or small, are made by the expenditure of comparatively small sums. And so, in several of the different businesses, as classified in the different subdivisions of section 454 of the Code, we find that the legislature, while imposing a tax in every instance on the gross receipts, accompanies the provision with another, that the expense of carrying on the business may be deducted. Without this, the levy would be made upon the gross receipts without any deduction whatever. No tax had been or was proposed to be levied on net incomes, but a levy was first authorized by said section 453 on property as such. What followed, as to other subjects of taxation, was designed to be and was, really, a tax on the business or occupation of the taxpayer. As was well said in Lott v. Ross, supra [38 Ala. 156], in respect to the imposition of a tax on gross receipts, it is not 'a property or income tax, but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed.' The legislature having the constitutional right to tax gross receipts or occupations and privileges, the mode in which it should be exercised, within constitutional limitations, was a matter wholly with them, not to be questioned by the courts. State v. Stephens, 4 Tex. 137, 140; Glasgow v. Rowse, 43 Mo. 479; Nathan v. Louisiana, 8 How. 73, 83 [12 L.Ed. 992]; and authorities supra. *Subdivision 5 of said section 454, must be construed, therefore, as a provision for an occupation or privilege tax, and not as a tax proper on property; and the clause in said subdivision,—'after deducting the expenses of carrying on such business,'—as indicating no more than the method adopted by the legislature in ascertaining the extent to which the occupation or business has been enjoyed and for which it ought to be taxed."* (Italics supplied.)

In a later case, Goldsmith v. Mayor & Aldermen of Huntsville, 120 Ala. 182, 185, 24 So. 509, 510, this court, speaking through the same Justice, said: "A tax on gross amount of sales, is not a tax on the goods themselves, or on the fruits of the sales, but upon the business of selling; is not a property tax, but an occupation *or income tax*." (Italics supplied.)

In the case of Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300, the state's contention was that the income tax levy in the general revenue act of 1919 (Gen.Acts 1919, p. 282) was an excise tax, and outside of the influence of the limitations of the Constitution embodied in sections 211 and 214 of the Constitution. The taxpayer, on the other hand, contended that net income was property, and that the act in levying a tax in excess of 6½ mills was violative of said constitutional limitations, especially section 214 of the Constitution of 1901. This court, after reviewing the former decisions of this court, among others those cited hereinabove, sustained the contention of the taxpayer, and held the levy void. In the course of the opinion in that case, the following definition of "income" was quoted with approval from the work of Holmes on Federal Income and Profit Taxes: " 'In its ordinary and popular meaning "income" is the amount of actual wealth which comes to a person during a given period of time. At any single moment a person scarcely can be said to have income. The word in most, if not all, connections, involves time as an essential element in its measurement or definition. It thus is differentiated from capital or investment, which commonly means the amount of wealth which a person has on a fixed date. Income may be derived from capital invested or in use, from labor, from the exercise of skill, ingenuity, or sound judgment, or from a combination of any or all of these factors. One of the most recent of its definitions is "the gain derived from capital, from labor, or from both combined" (Stratton's Independence v. Howbert, 231 U.S. 399 [34 S.Ct. 136, 58 L.Ed. 285]; Doyle v. Mitchell Brothers Company, 247 U.S. 179 [38 S.Ct. 467, 62 L.Ed. 1054]).' " 204 Ala. 492, 494, 86 So. 56, 57, 11 A.L.R. 300.

A reading of our cases clearly demonstrates that the line of demarcation between the reasons for denominating a tax laid on the basis of income as a property tax, or an excise tax, is very shadowy. As a matter of common knowledge it is seldom that income can be located at any specific time, as wealth in hand. It is more often a mere memory of things passed.

The Eliasberg Bros. Mercantile Co. Case, as appears from the report and annotations appended thereto in 11 A.L.R. 300, 313, 314, was a pioneer in the field denominating such tax as a property tax, and among the cases cited in the annotation, Board of Revenue of Montgomery County v. Montgomery Gaslight Company, 64 Ala. 269, is not included, for the very sound reason that 'the decision in said case does not support that view.

In the Eliasberg Bros. Mercantile Co. Case, the court criticized Waring v. Mayor and Aldermen of the City of Savannah, 60 Ga. 93, decided in 1878, and Glasgow v. Rowse, 43 Mo. 479, decided in 1869, as "very technical, if not illogical." Those cases held, in substance, that taxes levied on the basis of incomes received during a special period of time were not taxes on property, but excise taxes on the privilege of receiving and enjoying such incomes under the protection of the state's laws and government.

Although the holding in Glasgow v. Rowse, supra, by the Missouri Supreme Court was reaffirmed on July 15, 1918, by that court, two years before the decision of the Eliasberg Bros. Mercantile Co. Case, that decision was not observed. The court, after restating the doctrine of the Glasgow Case, said: "The reasoning and conclusion of the court in the above case has never been disapproved in this state, and has been extensively cited and approved in other states and in text-books." Ludlow-Saylor Wire Company v. Louis Wollbrinck, 275 Mo. 339, 205 S.W. 196, 197.

The holding of the Supreme Court of Georgia in Waring v. Mayor and Aldermen of the City of Savannah, supra, was likewise reaffirmed by the court in Featherstone v. Norman, Tax Com'r, 170 Ga. 370, 153 S.E. 58, 70 A.L.R. 449, and the annotations clearly show that the weight of authority sustains the holding that a tax laid on incomes is an excise tax. See Stanley v. Gates, 179 Ark. 886, 19 S.W.(2d) 1000; Sims, State Comptroller, v. Ahrens et al., 167 Ark. 557, 271 S.W. 720; Lawrence v. Mississippi State Tax Commission et al., 162 Miss. 338, 137 So. 503, affirmed 286 U.

S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L. R. 374.

The foregoing observations are made, not for the purpose of' discrediting the opinion of the court in the Eliasberg Bros. Mercantile Co. Case, but as shedding some light on the purpose and meaning of article 22 embodied in the Constitution of 1901 by the Twenty-Fifth Amendment thereof, which provides:

*"The legislature shall have the power to levy and collect taxes for state purposes on net incomes from whatever source derived within this state, including the incomes derived from salaries, fees and compensation paid from the state, county, municipality, and any agency or creature thereof,* for the calendar year, 1933, and thereafter and to designate and define the incomes to be taxed and to fix the rates of taxes provided that the rate shall not exceed 5 per cent nor 3 per cent on corporations. *Income shall not be deemed property for purposes of ad valorem taxes.* From net income an exemption of not less than fifteen hundred dollars ($1,500.00) shall be allowed to unmarried persons and an exemption of not less than three thousand ·dollars ($3,000.00) shall be allowed to the head of a family, provided that only one exemption shall be allowed to husband and wife where they are living together and make separate returns for income tax. An exemption of not less than three hundred dollars ($300.00) shall be allowed for each dependent member of the family of an income tax payer under the age of 18 years. The legislature shall reduce the ad valorem tax from time to time when and to such an amount as the revenue derived from the income tax will justify. In the event the legislature levies an income tax, such tax must be levied upon the salaries, income, fees, or other compensation of state, county and municipal officers and employees, on the same basis as such income taxes are levied upon other persons. All income derived from such tax shall be held in trust for the payment of the floating debt of Alabama until all debts due on Oct. 1st, 1932, are paid and thereafter used exclusively for the reduction of state ad valorem taxes." Cumulative Supplement 1936, Code of Alabama, pp. 16, 17. (Italics supplied.)

■ Viewing the amendment from a standpoint of common sense, without particular regard to its grammatical structure —which does not tend to lucidity—in the light of legislative history in respect to income tax, and the interpretation and application of the Constitution thereto, it is reasonably clear that its dominating purpose is to remove net incomes, as a subject of taxation, from the influence of the decision of this court in Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300, and sections 150, 211, 214, and 281 of the Constitution, by taking this subject of taxation, by constitutional mandate, out of the property class, placing it in the class of privileges that are subject to excise taxation. That portion of the amendment which subjects salaries, fees, and compensation of public officers, within the protection of sections 150 and 281, from reduction by taxation, was in effect a grant of power, in that it brought such incomes within the jurisdiction of the Legislature. Hard, State Comptroller, v. State ex rel. Owen, 228 Ala. 241, 153 So. 725; Evans v. Gore, Deputy, etc., 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519; In re Opinions of the Justices, 225 Ala. 502, 144 So. 111.

■ To state the proposition in other words, the purpose of the amendment was to enlarge the power of the Legislature, not to restrict it except as to the percentage and purpose of the tax.

■ The purpose of the expression, "within this state," as we construe it, was to conform the amendment to the doctrine then well established by the decisions of the Supreme Court of the United States, "that no state may tax anything not within her jurisdiction without violating the Fourteenth Amendment [of the Constitution of the United States]." Farmers' Loan & Trust Company, Executor, v. State of Minnesota, 280 U.S. 204, 50 S.Ct. 98, 99, 74 L.Ed. 371, 65 A.L.R. 1000.

■ As before stated, the general purpose of said amendment, therefore, was to enlarge the power of the Legislature in taxing net incomes, not to restrict it except as to the purposes of the tax and the percentage of the levy. It is clear, therefore, that without violating the Fourteenth Amendment to the Constitution of the United States, the state has the power to tax its own citizens in respect to their net incomes, flowing from sources within or without the state. Lawrence et al. v. State Tax Commission of Mississippi, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374; Ohio Oil Company v. Conway, Supervisor of Public Accounts of Louisiana, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775;

584

Shaffer v. Carter, State Auditor, et al., 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Featherstone v. Norman, Tax Com'r., 170 Ga. 370, 153 S.E. 58, 70 A.L.R. 449.

It is next insisted by the taxpayer that the Act approved April 17, 1933, entitled "An Act In reference to and to further provide for the general revenue of the State of Alabama" (General Acts 1933, Ex. Sess., pages 150–181), does not tax incomes of the taxpayer flowing from sources outside the state of Alabama.

Section 1 of the act provides: "(a) That in addition to all other taxes now imposed by law, there is hereby levied and imposed upon every resident of Alabama a tax on *the entire net income as defined in this Act*," etc. Section 8 [limited to individuals] provides: "In the case of an individual, the term 'net income' means the gross income as defined by Section 10 of this Act, less the deductions allowed by Section 11 of this Act." And section 10 [also limited to individuals, except subsection (3) of said section] provides: "The term 'gross income' as used herein: (1) Includes gains, profits and income derived from salaries, wages or compensation for personal services of whatever kind, or in whatever form paid, including the salaries, incomes, fees or other compensation of State, County and Municipal officers and employees, or from professions, vocations, trades, business, commerce or sales or dealings in property whether real or personal, growing out of ownership or use of or interest in such property; also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit *and the income derived from any source whatever*." (Italics supplied.)

Subsection (3) of section 10 provides: "The term 'gross income' shall *mean and include* all of such income arising from sources within the State *whether paid to residents or nonresidents including interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise*, and all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits in the manufacture and disposition of goods within the State of Alabama. It shall also mean and include interest, dividends or other forms of income from and gains or profits realized upon the sale, exchange or other disposition of all forms of intangible personal property owned by or held any where in or without the State of Alabama *for the account of any resident or domestic corporation*." (Italics supplied.)

While the definition of "gross income" embodied in subsection (3) of said section 10 is somewhat ambiguous, when the quoted provisions are considered together, and along with the provisions of subsection (b) of section 1, relating to "natural persons not residents," and section 22, which imposes the tax on "every corporation organized under the laws of Alabama and doing business in this State * * * upon and with *respect to their* entire net income," and levies "a like tax * * * upon every foreign corporation doing business in the State of Alabama * * * upon and with *respect to their entire net income* as herein defined, *from property situated within this State and from business done and transacted within this State*," and section 25, defining gross incomes of corporations [and it may here be observed the term "Section 23" as used in section 25 clearly means "Section 22"], and especially subsection "(b) In the case of a foreign corporation, gross income includes only the gross income from sources within this State," etc., it seems reasonably clear that the legislative intent was to impose the tax on residents, natural persons, and corporations, within the state's jurisdiction in respect to their entire net incomes, from whatsoever source derived, and upon nonresidents engaged in *business in this state* in respect to the income flowing from such business. General Acts 1933, Ex.Sess., pages 150, 158, 159, 167, 169.

A construction which would limit the tax on residents of the state to net incomes flowing from sources or business done in this state would be "more restrictive than the words and purpose of the statute import." Western Union Telegraph Co. v. State Board of Assessment, 80 Ala. 273, 280, 60 Am.Rep. 99.

There is an absence of unreasonable or arbitrary discrimination in the levy. It appears that taxpayers of each class are accorded substantially the same rights and immunities. If there is a difference between residents and nonresidents, the difference "is only such as arises naturally from the extent of the jurisdiction of the state in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination." Shaffer v. Carter, State Auditor et al., 252 U.S. 37,

57, 40 S.Ct. 221, 227, 64 L.Ed. 445. It may be observed here, that there is nothing in the agreed case going to show that part of the income of appellee flowing from business conducted by the partnership in other states and countries has been authoritatively taxed by such other states and countries; therefore, the question of the effect of double taxation is not presented. The burden here was on the taxpayer. Shaffer v. Carter, State Auditor, et al., supra.

Our conclusion, therefore, is that the act does not offend the "equal protection clause" of the Fourteenth Amendment of the Constitution of the United States.

The question raised by appellee, that the Act of April 17, 1933, is void because the Legislature exceeded its power as limited by section 214 of the Constitution of 1901, in its enactment, as was held in Eliasberg Bros. Mercantile Co. v. Grimes, supra, and that the subsequent adoption of the amendment, with specific validating provisions, was inefficacious to give it life, is a question on which the Justices were divided, as appears from In re Opinions of the Justices (In re Income Tax Enabling Act), 227 Ala. 291, 149 So. 776. The writer is still of the opinion that the act was void when passed and approved, and what appears to him now as an absurd proposition in headnote 5 of the report of that opinion confirms his conclusion. That is: "Income Tax Enabling Act, effective only upon adoption of constitutional amendment authorizing tax provided for in act, *held not invalid when passed notwithstanding act exceeded constitutional limitation in force at time, where constitutional amendment was subsequently adopted and act then became operative.*" That opinion, it would seem, is also in conflict with In re Opinions of the Justices, ante, p. 56, 166 So. 706. (Italics supplied.)

The other Justices, however, adhere to the rule stated in Re Opinions of the Justices (In re Income Tax Enabling Act) 227 Ala. 291, 149 So. 776, and hold that the act is valid.

The appellee concedes that if Amendment 25 does not limit the power of the Legislature to incomes flowing from sources within the state, that income in the form of interest on bonds of foreign corporations, not doing business in Alabama, owned by a citizen of Alabama, and dividends on stock in such foreign corporations so owned, are taxable. This concession renders further treatment of that subject useless.

The interpretation which we have given the act rendered taxable incomes derived by the taxpayer, as a member of the partnership of Weil Brothers, from sales of cotton consummated during the year 1933, outside this state. So, also, from cotton purchased and sold outside of the state by said partnership resident of this state.

In ascertaining the deductible losses arising from the purchase and sale of capital assets, only losses within the year are deductible, and where, as here, the capital assets were purchased before the year 1933—how long does not appear— the loss should be reckoned by deducting the sale price from the value of the assets on the beginning of the tax year. Gen. Acts 1933, Ex.Sess. p. 158, § 9.

Some of the rulings of the circuit court, expressed in the decree, from which the appeal is prosecuted, are in conflict with the foregoing, and for the errors so committed, the decree is reversed and the cause remanded to that court for further proceeding not inconsistent with this opinion.

Reversed and remanded.

All the Justices concur.