174 So. 516

## BEELAND WHOLESALE CO. v. KAUF-MAN, Chairman, Alabama Unemployment Compensation Commission, et al.

3 Div. 198.

Supreme Court of Alabama.

March 18, 1937.

Rehearing Withdrawn June 1, 1937.

Denson & Denson, of Opelika, and Martin, Turner & McWhorter, of Birmingham, for appellant.

Bibb, Asst. Attys. Gen., Nicholas E. Stallworth, of Mobile, and Joseph P. Chamberlain and Noel T. Dowling, Sp. Assts. to the Atty. Gen., for appellees.

A. A. Carmichael, Atty. Gen., Thos. Seay Lawson, C. L. Rowe, and Peyton D.

FOSTER, Justice.

The purpose of this litigation is to test the validity of an act of the Legislature, as amended, known as the "Unemployment Compensation Law." Gen. Acts of 1935, p. 950; Gen.Acts of 1936, Ex.Sess., pp. 176, 225, 228.

Briefly stated for the immediate purpose of stating the issues, it may be said to require certain employers and employees to make regular contributions to a fund to be paid to the employees of that class, when unemployed, according to the requirements and restrictions fully expressed. The employer means any person or corporation who has employed at least eight persons in each of twenty or more calendar weeks in 1935, or any subsequent calendar year (omitting further detail), excepting certain specified classes of employment.

Employee means any person employed by an employer, who is subject to this act and in employment subject to it. The contributions by the employers are based upon a definite percentage of the monthly pay roll of each such employer, respectively, until 1941, and each year thereafter, when the commission shall classify employers in accordance with their benefit experience, and shall determine for each employer the rate of contribution which shall apply to him through that year based on that classification. Such classification shall be with respect to the degree of unemployment hazard, taking into account all relevant and reasonable factors. The rate of contribution by employees is fixed at a definite per cent. of his wages. All contributions by both employers and employees are paid into a trust fund handled by a treasurer elected by the state commission set up to administer the act. We need not detail the particular provisions regulating the payment of benefits, when payable and the conditions on which payments are to be made. They are matters

which do not affect the legal questions here presented.

Appellants insist that the contributions are tax assessments, and that as such they are made to extend to an arbitrary class, without due regard to others who should bear the burden, and that they are not assessed according to the extent to which each such employer has contributed to unemployment, on a merit rating basis, but upon a straight line proportion applicable to all employers, according to his monthly payroll. They argue that there is a vast diversity of employment, and so dissimilar in character that it is arbitrary for unemployed of all such employments to be on the same scale of benefits from a fund to which employers have largely contributed, but whose business is not even remotely connected with that in which the unemployment may have occurred. They also contend that the tax is an income tax, as applied to employees, not within the Income Tax Amendment (Const.1901, Amend. No. 25), and is therefore a property tax, and violates sections 211, 214, and 217 of the Alabama Constitution; and further, that the Alabama Act is not operative unless the Federal Social Security Act, 42 U.S.C.A. §§ 301–1305, is constitutional, and that it is unconstitutional, and should be so declared because it violates Amendment No. 5, due process, and the tax was not laid for a purpose authorized by article 1, section 8, Federal Constitution, not being for the general welfare of the United States, and exerts an illegal coercion on the states to enact an unemployment compensation law.

Appellants also contend that the Alabama act violates the due process clause of section 6, Alabama Constitution, and the Fourteenth Amendment to the Federal Constitution, in that the tax or contribution is not laid for any governmental function of the state or its subdivisions or any other public purpose, but its effect is to tax one class of citizens for the personal and private benefit of another class, and that it therefore also violates section 23 of the Alabama Constitution. The right is questioned because the contributions are nothing but taxes, and must be rested on the taxing power of the State.

■ We know of no authority of a state to take the property of a citizen except by way of taxes or eminent domain. It is said in Moog v. Randolph, 77 Ala. 597, 602, that "there is a clear line of demarcation between the taxing power of a government, and the right of eminent domain, which is not properly distinguished in many of the adjudged cases, thus sometimes tending to confusion. Taxation is the just proportion of the citizen's share or contribution to the support of the government, while eminent domain involves the idea of a forced contribution, beyond, or in excess of his share." It is also said that the taxing power is not limited by the constitutional restrictions on the right of eminent domain.

■ The statement is frequently made that ordinary money is not subject to the power of eminent domain, since compensation of an equal amount must be paid for it, and is therefore in the nature of a forced loan. 20 Corpus Juris, 588. Eminent domain is in the nature of a forced *sale of property* rights for an amount of money equal to its value, although originally, and without constitutional provision, the state could take property for public use without compensation, though in excess of the just share of the citizen to the expense of government. Steele v. County Commissioners, 83 Ala. 304, 3 So. 761.

The contributions here in question are not justified as an exercise of the right of eminent domain, but are based upon a claim that they represent the just proportion of certain citizens' share to the support of the government. They are taxes, and can be justified only as such.

■ The power to tax is an inherent attribute of sovereignty. It is not a power delegated to the states. It is vested by the Constitution in the Legislature subject only to the restrictions in the State and Federal Constitutions. Except in respect to due process and equal protection of the laws, it has been pointed out that the constitutional restrictions on the Legislature of Alabama in this respect extend only to property taxes, Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am.St. Rep. 143; Phoenix Assur. Co. v. Fire Department of Montgomery, 117 Ala. 631, 23 So. 843, 42 L.R.A. 468; Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552, except as now limited by the Income Tax Amendment.

■ Subject to such limitations the Legislature's acts in imposing taxes are reviewable only by an exercise of the electorate and invoke no power of the ju-

diciary. Stein v. Mobile, 24 Ala. 591, 614; Capital City Water Co. v. Board of Revenue of Montgomery, 117 Ala. 303, 23 So. 970.

Taxes may be laid by the state on *persons, property, rights,* and privileges. State v. Weil, 232 Ala. 578, 168 So. 679. The purpose of giving a designation to a tax, as being a certain one of those just enumerated, is to determine if there is a limitation or restriction in the Constitution on such a designated tax. That is, whether it violates the restrictions on property taxes, or due process and equal protection, if the tax is personal or an excise. The police power does not confer on the state a right to tax which it did not already possess. The police power of the state furnishes occasion for expenditures. It is not to be measured by the power of cities and counties to license for police purposes. They have no right to license or lay any tax except as it is granted to them. Mills v. Court of County Commissioners, 204 Ala. 40, 85 So. 564; Phoenix Carpet Co. v. State, supra.

When their authority is to license for police purposes only, they cannot license for the general revenue. Police power then measures the power to tax in that sphere. Standard Chem. & Oil Co. v. Troy, 201 Ala. 89, 77 So. 383, L.R.A. 1918C, 522; Van Hook v. City of Selma, 70 Ala. 361, 363, 45 Am.Rep. 85. But the police power of the state in no respect measures its power to tax. However, we will show that if a tax is earmarked for a certain police purpose, if that purpose is not in the police power, the tax falls with it. So much is said as applicable to both taxes, employers' and employees'.

We will first refer more directly to the tax on employers. It has no aspects of a property tax. It is not measured by property ownership, or income, but on a feature of its outgo, and is unquestionably an excise. Therefore the restrictions on property taxes have no application. Sections 211, 214, and 217, Constitution. But it must square with due process and equality.

It is contended that it does not meet that requirement because manifestly all employers have not and will not contribute to unemployment with equal responsibility; and their businesses are so dissimilar and far removed from each other that it is an inequality to require all to contribute ratably to one pool for the unemployment in business in which many employers will have no connection.

This presents a federal question under the Fourteenth Amendment, as well as a state question under section 6, Alabama Constitution. But no decision of the *United States Supreme Court is directly in* point on it, and until that court passes on it, the state courts must do so on their own judgment when it is necessary to determine the rights of its citizens. But we will endeavor to apply the principles which that court has established to guide us in arriving at a conclusion.

The tax we are dealing with now, the state tax, is laid for a definite purpose and the amount collected is to be put in trust to be used for no other purpose. The tax levied cannot be separated from the purpose to be accomplished, and the resulting benefits to the employer class generally.

The Railroad Retirement Act (Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468) made provisions for railroad employees existing then, or thereafter, or who had been so within the past year, and conferred benefits upon all such employees who reached the age of 65, if he retires, but may by agreement continue in service until he reaches 70, when he must retire. The purpose of such provision was not to stabilize industry or the business of railroads, and it was not made to appear that the pensioners thus provided for occupied such a relation to the economic fabric as that to give them purchasing power would have a stabilizing influence in such a way as to affect the business generally of railroads. But it was said to be akin in principle to the Workmen's Compensation Laws, which properly put upon each employer the burden of caring for the hazards of its own business, and that to pension its employees upon reaching 65 years was a burden peculiar to each employer separately. There was said to be a difference in responsibility for the drain or burden on the fund arising from different industries which should be equated if the recipients of that fund are to be paid out of a pool to which all employers contributed.

The Mountain Timber Case (Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas. 1917D, 642) was a workmen's compensation case in which employers contributed to a pool. It was sustained and was different

from the Railroad Retirement Case, supra, in that in the former the contributions were on a merit rating basis, but not so in the railroad case.

 But we do not think a merit rating is essential to the act in question here, because all employers will benefit on a horizontal basis from the effects sought to be accomplished, and it is conceded that there is at present no available data on which to fix a merit rating basis. The act is a part of a nationwide program to prevent widespread unemployment for an appreciable period. It is co-ordinated with similar acts in other states. Extensive unemployment depreciates consumer purchasing power, and tends to demoralize a large class of citizens, and to stimulate crime, disorder, and social degradation. That is the rationale of the program, as we understand it. Whether it will work is not a judicial inquiry, if it is a legitimate end, and the means are reasonably related to that end. We do not think that it is arbitrary or capricious. It is impossible to forecast the extent to which each employer will directly or indirectly contribute to unemployment, so as to put them on a merit rating basis except by reference to past experience for which there is no available data at the present. And then the situation would be speculative. The upbuilding and prosperity of one business often causes the decline of another, with no fault in management, but due to new processes, discoveries, and inventions. Who is responsible for the unemployment thus occasioned? This act looks to an adjustment of such questions in 1941, and thereafter. Whether it will then be workable on a merit basis or whether due process is accorded in such adjustments as may then be undertaken will then be time to decide. No such question is here involved.

The theory of taxing employers in a small way for an ulterior public purpose, though it may have an immediate private use, is illustrated in the bank deposit guaranty principle approved in Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 188, 55 L.Ed. 112, 32 L.R.A.(N.S.) 1062, Ann.Cas.1912A, 487; Abie State Bank v. Bryan, 282 U.S. 765, 51 S.Ct. 252, 75 L.Ed. 690. The bankers who contribute to the pool will most of them never be responsible for the evil sought to be corrected. Each bank should of course pay its own depositors, and will do so or fail

in business. The other banks did not contribute to that failure. But the widespread knowledge entertained by the public that depositors in banks will get their money regardless of the solvency of any particular bank will tend to prevent a run by depositors on banks generally, and stabilize the banking business. But all banks contribute to the pool in equal proportion on the basis of daily deposits.

 And so when employers who make ratable contribution to the pool for unemployed, and thereby uphold an economic and moral status necessary for their successful operation. When a large extent of territory or people are thus benefited, the whole state in a public way is affected. This is illustrated in the irrigation project in California held to be of such widespread benefit as to be for a public purpose and therefore to afford due process. Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369. The public benefit there provided distinguishes it from our drainage district cases, Collins v. Hollis, 212 Ala. 294, 102 So. 379; Robertson v. Collins, 218 Ala. 54, 117 So. 415, and from the Railroad Retirement Case, supra. Our judgment is that the tax on employers does not deprive them of due process or of equal protection.

We will here also consider the employees' contention made in their case, so that one opinion will answer for all cases. Section 4(d) of the amendment of April 21, 1936, (Gen.Acts, Ex.Sess.) page 227, provides that "Each employee shall contribute to the fund one per centum of his wages earned after May 1st, 1936." The employer is required to withhold this amount from such wages and transmit it into the fund. The employee makes no report and takes no part in any of the proceedings leading to the contribution. It is upon his gross wages with no deductions or exemptions. No assessments are made.

If this is a tax on property it violates sections 211, 214, and 217, Constitution, and is not within the terms of the income tax amendment. The claim that it is an income tax and therefore a property tax is based on Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300. We have many cases which hold that a tax is not a property tax always, though measured by certain property values. Lott v. Ross, 38 Ala. 156; Goldsmith v. Huntsville, 120 Ala. 182, 24 So. 509; Nachman et al. v. State Tax Commission (Ala.Sup.)

173 So. 25; [1] Anderson v. Birmingham, 205 Ala. 604, 88 So. 900; Phelps v. Union Bank & Trust Co., supra. Whether so or not is often said to depend upon the legislative intent manifested by its set up, and the machinery provided for its assessment and collection.

If it is classified with other property as a subject of property tax, it will be so held. Ex parte Morrill-Doyle Realty & Ins. Co., 213 Ala. 697, 106 So. 63. Property taxes must be assessed in some form. Perry County v. Selma, M. & M. R. Co., 58 Ala. 546. Or something equal to it must be provided. The state may tax its citizens personally, provided it violates no restriction. The federal government cannot do this except in proportion to the census. Article 1, § 9, cl. 4.

Many cases have held, as we pointed out in State v. Weil, 232 Ala. 578, 168 So. 679, that an income tax is in the nature of an excise, though there is no particular privilege protected other than that of citizenship (see New York v. Mark Graves, 57 S.Ct. 466, 81 L.Ed. ——, United States Supreme Court, March 1, 1937, appeal from New York); although in Alabama a different theory was declared in the Eliasberg Case, supra. Citizens as such, for their personal protection, may be taxed, if there is due process and equal protection, and no prohibition in the Constitution. Judge Cooley calls it a specific tax, and defines it as "a specific sum by the head or number or some standard of weight or measurement, and which requires no assessment beyond a listing and classification of the objects to be taxed." 1 Cooley on Taxation (3d Ed.) p. 412.

The tax here in question is an exercise of the inherent right to levy a specific tax not prohibited by the Constitution, if the classification is not violative of due process and equal protection. It is the same right which allowed the state to exact a poll tax before the Constitution adopted any features connected with it. 61 Corpus Juris, 1534, 1535.

Another principle is here applicable referred to in Noble State Bank v. Haskell, supra, as follows: "It would seem that there may be other cases beside the everyday one of taxation, in which the share of each party in the benefit of a scheme of mutual protection is sufficient compensation for the correlative burden that it is compelled to assume." Also when a fee is charged to protect and facilitate traffic in a harbor which is or may be beneficial to all who enter the harbor. Clyde Mallory Lines v. Alabama ex rel. State Docks Commission, 296 U.S. 261, 56 S.Ct. 194, 80 L.Ed. 215; Id., 229 Ala. 624, 159 So. 53. Also the Head Money Cases (Edye v. Robertson), 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798.

The contribution here in question is exacted of a certain class of employers and their employees for the benefit of unemployed in that class. In a broad sense they are both engaged in a joint enterprise whose success is beneficial to them both. The exaction of the tax on them both in the same act is an excise tax on the co-ordinated business of employment looking to the end of helping them both and the people generally, and does not deprive either of due process or equal protection, and is measured by a standard which has reasonable relation to the end sought.

But it is said the scheme violates section 23 of the Alabama Constitution, as well as the due process and equal protection clauses because it is in essence the levying of a tax for the benefit of private persons, and is not a valid exercise of the state's police power.

We accept the doctrine, as we have said, that if a state undertakes a scheme which it has no right to maintain, and the enactment of it carries a plan for raising revenue to accomplish its purpose, the feature adapted to raising the revenue will not stand if the scheme for which it is solely to be used is not within the state's constitutional right. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, "The Triple A" case. So that if the use of the fund as enacted, is prohibited by section 23, it cannot be within the police power.

It seems never to have been supposed, without those provisions, that the state could donate funds to an individual, not in the discharge of a public duty. This was pointed out by Judge Brickell in Phoenix Assur. Co. v. Fire Department of Montgomery, supra, and has been given expression in many later cases, as well as earlier ones. Garland v. Board of Revenue, 87 Ala. 223, 227, 6 So. 402; Southern Ry. Co. v. Hartshorne, 162 Ala. 491, 50 So. 139; State v. Clements, 220 Ala. 515, 126 So. 162; Griffin v. Jeffers, 221 Ala. 649, 130 So. 190; Stone v. State ex rel. Mobile Broadcasting

---

[1] 233 Ala. 628.

Corporation, 223 Ala. 426, 136 So. 727; also by the United States Supreme Court in Cole v. La Grange, 113 U.S. 1, 5 S.Ct. 416, 28 L.Ed. 896. And in the case of Alabama Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695, it was held that the inhibitions of sections 93 and 94 did not apply to a public corporation.

In Stein v. Mobile, 24 Ala. 591, as well as in many other authorities, it was held that taxation is only for the support and maintenance of the government, but that this means to include in its support all those means and appliances ordinarily adopted, or which may be calculated to develop the resources of the state, and add to the aggregate wealth and prosperity of the citizens, improving the social, moral, and physical condition of the people by wholesome police regulations, and by a judicious system of public instruction as well as the perpetuity of the government itself. It was held to include the right to authorize the city of Mobile to tax the owners of real estate to aid in the construction of railroads coming into the city. This was approved in Gibbons v. Mobile & G. N. R. Co., 36 Ala. 410, 437, and is recognized in Cole v. La Grange, supra.

It is said in Garland v. Board of Revenue of Montgomery, 87 Ala. 223, 6 So. 402, that the prohibition of section 94, Constitution, was ordained to prevent subscriptions to such private corporations, but in the Alabama Bridge Corporation Case, supra, neither this nor any other feature of the Constitution was held to prohibit appropriations or credit to corporations created to foster public enterprises.

While section 23, Constitution, provides that "the right of eminent domain shall not be so construed as to allow taxation or forced subscription for the benefit of railroads or any other kind of corporations, other than municipal, or for the benefit of any individual or association," it together with section 93 (Amend. No. 12) was prohibiting for the state what was prohibited for cities and counties in section 94.

We think that the meaning of the quoted provision of section 23, supra, is that the state cannot levy taxes or appropriate revenues to the purposes there named, and cannot so interpret the right of eminent domain which is limited by that section in order to justify any such power. Schultes v. Eberly, 82 Ala. 242, at pages 245, 246, 2 So. 345. But when it prohibits the appropriation of revenue to private individuals, it does not mean that it may not be done as a means or incident to a public purpose sought to be accomplished or to satisfy a public duty to that individual. It is said in Noble State Bank v. Haskell, supra, "It is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use."

We do not at all minimize the meaning of section 23 by holding in line with our cases, and other authorities, that it could not have meant that a vast economic scheme of stabilization cannot be maintained by the state, though it is necessary that to accomplish that purpose for the benefit of all, some individuals may receive more immediate benefits than others, when all are intended to be benefited. We do not think that the last clause of section 23 meant to curtail the state's police power, except to prohibit the state to contribute revenue or other forced contributions or to lend its credit to a private corporation or other private enterprise, since it could never do this to an individual except for a public purpose or to discharge a public duty. United States v. Realty Co. (United States v. Gay), 163 U.S. 427, 16 S.Ct. 1120, 41 L.Ed. 215; Board, etc., v. Puckett, 227 Ala. 374, 149 So. 850.

In dealing with the state's police power, which every state reserves, the United States Supreme Court, in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 240, 78 L.Ed. 413, 88 A.L.R. 1481, written by Chief Justice Hughes, notes that it is not limited to such public calamities as fire, flood or earthquakes, but that it "cannot be said to be nonexistent when the urgent public need demanding such relief is produced by other and economic causes."

Economic welfare on a large scale extending to every form of business and affecting every person in a state is within its police power to protect as well as their purely physical and moral condition. Mutual Building & Loan Association v. Moore, 232 Ala. 488, 169 So. 1; Noble State Bank v. Haskell, supra. But such conditions do, as everybody knows, affect the physical and moral welfare of the people. Starvation, or the tendency to it, due to economic depression, is as alarming and dangerous to the state and its people as that condition due to flood, drouth, or earthquake. Under such circumstances, the state is not dependent upon section 88, Constitu-

tion, to help the poor. It is to prevent or break a widespread economic depression, and its demoralizing influences.

■ In view of well-known recent experiences, the whole question of social security, in which employer and employee and the public at large are all concerned, is a proper subject of governmental action in the interest of the general welfare.

■ We think it is within the state's police power, not limited by section 23, because the purpose is public, and that there is no arbitrary or capricious or unequal classification either as applied to employers or employees. Similar state enactments have been upheld in New York, Massachusetts, and California: Chamberlin, Inc., v. Andrews, 271 N.Y. 1, 2 N.E.(2d) 22, 106 A.L.R. 1519; Gillum v. Johnson (Cal.Sup.) 62 P.(2d) 1037; Howes Bros. Co. v. Unemployment Compensation Comm. of Mass. (Mass.) 5 N.E.(2d) 720.

■ We cannot inquire into the question of federal coercion as affecting state legislation. We only lay down the act by the side of the Constitution. If they square with each other, we can go no further. United States v. Butler, supra; McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561; Magnano Co. v. Hamilton, 292 U.S. 40, 47, 54 S.Ct. 599, 602, 78 L.Ed. 1109; Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511.

■ It is also insisted that the passage of the act violated section 70, Constitution, in that it is an act to raise revenue and originated in the Senate instead of the House as that section requires. But when an act has for its main purpose provision for the general welfare by enacting a scheme within the state's police power, it is not one to raise revenue, though it does so as an incident to such scheme. In re Opinions of Justices, 232 Ala. 60, 166 So. 710; Kennamer v. State, 150 Ala. 74, 43 So. 482; Perry County v. Selma, M. & M. R. Co., 58 Ala. 546. It does not violate section 70.

Appellant also contends that the act is not effective because its operation is made to depend upon the decision of the United States Supreme Court upholding the Federal Social Security Act, Acts Extra Sess. 1936, pp. 228, 229. The contention is that we cannot allow other governmental jurisdictions to legislate for us.

■ Whether that principle would apply to congressional legislation, since Congress can legislate in an effective way in Alabama, we need not here declare. We cannot make our legislation dependent upon that of other states. State v. Firemen's Fund Ins. Co., 223 Ala. 134, 134 So. 858, 77 A.L.R. 1486; Clark v. Mobile, 67 Ala. 217; State v. Praetorians, 226 Ala. 259, 146 So. 411. We have often held that an act complete in itself may be made to depend upon some contingency for its operation to become effective. In re Opinions of Justices, 232 Ala. 60, 166 So. 710. Such contingency cannot be the legislative enactments or administrative regulations of another state.

■ But in this instance the Federal Security Act had been enacted by Congress. The Alabama act ties into it, and forms a part of a nation-wide economic scheme provided for by the federal act. Unless it is tied up to such a widespread program, it probably could not have the influence on economy, which is the foundation for its existence. It would be useless, perhaps, for one state to try to effect economic stability in respect to a situation which knows no state boundaries. But the act is not dependent upon action by other states, but the validity of an existing act of Congress. Expressly made to depend upon a decision of the United States Supreme Court upholding that act, in reality it is merely dependent upon its constitutionality. Reference is made to the decision of the United States Supreme Court because that is the only court which has the authority effectually to declare it unconstitutional. Dependence upon its decision in that respect is but dependence upon the effect of that decision. Its effect is that the federal act is valid or that it is invalid from the beginning. It never existed if it is declared to be unconstitutional. We see no reason why an Alabama statute may not be made to depend upon the validity of an existing act of Congress into which it is tied in a way necessary for it to have an effective field of beneficial operation for the public welfare. Such is, we think, the status of the Alabama act, and it cannot be stricken down on that account.

It is necessary for us to lay down the law of this suit as we understand it, and since the Alabama act is dependent upon the constitutionality of the federal act, it is necessary to express our opinion as to that insofar as it affects its unemployment features, since the United States Supreme Court has not acted on it. We do not feel disposed to enter into an extended discussion of the question, because it would serve

no useful purpose, but we will mention the various contentions which have been made by counsel, and state our views on them.

 The Fifth Amendment to the Federal Constitution secures due process against an act of Congress, while the Fourteenth secures it against state action. But due process in them both has the same meaning as we understand them. So that if we are correct in holding that the state act does not deprive employers taxed of due process because of the inequality of taxation, the same principle would sustain the federal act against a like attack, and further discussion is not necessary as to that.

It is also contended that the federal act is subject to the Triple A case (United States v. Butler), supra, because the tax is levied for a purpose outside the competency of Congress. In this connection we observe that title III of the Act (42 U.S.C.A. § 501 et seq.) makes an appropriation out of which the Social Security Board, created by the act, will certify for payment to each state for the administration of its unemployment compensation law an amount to be determined by the board. This is payable out of the general federal treasury, and is set up to be independent of the tax which is later provided for. Title No. 9 provides for the tax upon employers of eight employees or more. It is to be collected by the Bureau of Internal Revenue, and put into the general treasury unrestricted. But the taxpayer may be credited to the extent of 90 per cent. of the tax by the amount of his contributions into an unemployment fund under state law.

(The State Act, § 3, provides that the state compensation fund shall be deposited in or invested in the obligations of the federal fund.) The federal act also creates a trust fund of all such state moneys as may be deposited under its laws. The act provides for distribution of the trust fund received from the states upon requisition by the state commissioners.

 It makes a tax levy and an appropriation, all out of the general treasury, and without earmarking the revenue raised. Congress need not specify the purpose for which revenue is raised. But if it does so, the taxpayer so affected may have such purpose inquired into judicially, to determine if it is in the power of Congress. But when Congress makes an appropriation not tied up with a tax to meet it, a taxpayer cannot, as the United States Supreme Court has held, have the courts determine wheth-

er the appropriation is within such power. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

So that in respect to the question here in hand, if the appropriation is independent of the tax and tax was not laid to meet the appropriation, no question here arises as to the power of Congress to make it. And, in that event, the tax will stand against such an attack as this without regard to the appropriation, and will be valid if within the power delegated to Congress as an independent act to raise revenue. So tested, it is clearly an excise tax and will stand under section 8, article 1, unless there is wanting due process under the Amendment No. 5. But we think the tax is also justified by that section if it be treated as unified with the appropriation, so that the taxpayer can, as he does, question the right to tax for that purpose.

It does not appropriate money to causes reserved by Amendment No. 10 to the states, as was held in the Triple A case, supra. It was clearly held in that case that Congress is not limited in its appropriation to the various powers expressly delegated to Congress in the various subclauses of section 8, but that it includes also the general welfare of the United States for which excise taxes are authorized in the first paragraph of section 8, provided that the exercise of such power does not infringe upon the reserved rights of the states. The ultimate question, assuming that the tax and appropriation are unified, seems to depend upon whether Congress can appropriate revenue out of the National Treasury to aid the states in administering their unemployment laws.

In the Triple A case, supra, the holding was that the purpose and effect was to trespass on states' reserved powers, by contributing public revenues to individual farmers to make contracts to reduce acreage and curtail production. But it was said that the court was not called upon "to determine whether an appropriation in aid of agriculture falls within" the general welfare clause of section 8, article 1. The opinion does not deny that the expenditure of funds for the benefit of farmers and in aid of a program of curtailment of production of agricultural products, and thus of a supposedly better ordered national economy, is within the specially granted powers. But it is declared that state power is nevertheless infringed by the expenditure of the proceeds of the tax to compensate farmers for the curtailment of their cotton acreage.

If the tax and appropriation, though unified, are to furnish merely administrative aid to the states in a co-ordinated effort to make a better ordered national economy, extending even to participation in a worldwide movement, it is clearly a legitimate end within section 8, article 1, for the protection of a basic interest of society, extending to the general welfare of the United States, and is therefore within the delegated power of Congress and infringes no power reserved to the states under the Tenth Amendment.

It is also contended that the federal act cannot stand because its purpose and effect are to coerce state action to secure an end which Congress cannot accomplish by its own action. Assuming that the principle is included in that declared to exist in respect to coercing indirectly personal or corporate action in respect to a matter over which Congress cannot act directly, as in the cases of Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432; Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; United States v. Constantine, 296 U. S. 287, 56 S.Ct. 223, 80 L.Ed. 233; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, it does not apply in respect to a matter as to which Congress can legislate, such as to lay inheritance taxes. Florida v. Mellon, supra.

So the contention reverts to the question of whether Congress can levy the tax in title IX, (42 U.S.C.A. § 1101 et seq.) although coupled with an appropriation as in title III (42 U.S.C.A. § 501 et seq.) to pay the states the expense of administering their unemployment compensation laws. We think the authorities support the power of Congress to levy an excise and make an appropriation to promote a program to better national economy, so long as it does not trespass on the reserved rights of the states, and deprives no one of due process. This right, however, is not to be measured by the fact that Congress has made many appropriations for state aid and they were paid without question, since taxpayers do not seem to possess the power to make such test in court. Massachusetts v. Mellon, supra. But this is not simply a grant with a condition, as in that case, with no penalty other than a loss of the grant to follow from a failure to comply with the condition, in which the state may simply take the grant and comply with the condition, or leave it. For if the states fail to enact satisfactory unemployment compensation laws, there is no provision for aiding the unemployed in them, whereas their employers must pay the full amount of the tax, the same as though there were such laws. The simple expedient is to enact an unemployment compensation law by the state. There is therefore something in the nature of a penalty for not doing so. But that fact does not invalidate the congressional act, if the whole plan is within congressional power. And since we think it is so, it does not infringe on the principle which prohibits Congress from doing indirectly what it cannot do directly.

Affirmed.

GARDNER, THOMAS, BOULDIN, and KNIGHT, JJ., concur.

ANDERSON, C. J., concurs specially.

BROWN, J., concurs in part and dissents in part.

ANDERSON, Chief Justice (specially concurring).

The last amendatory Act 1936, Ex.Sess., p. 228, provides: "That in the event the Supreme Court of the United States shall hold the Federal 'Social Security Act' approved by the President August 14th, 1935, unconstitutional or inoperative for any reason whatsoever, then this Act shall become void, inoperative and of no effect."

It is evident that the state does not wish to embark in the "social security" business except in co-operation with the federal government. It is also manifest that the life of the Alabama act is dependent on what the United States Supreme Court may hold as to the validity of the federal act. Therefore, regardless of what this court may think or hold as to the Alabama act, its life and existence is dependent upon the result of the holding of the United States Supreme Court as to the validity of the federal act, as said court is made the final arbiter by the express terms of the Alabama act, even though our act does not offend either the State or Federal Constitution. I therefore think that a decision by us at this time is premature, speculative, and unnecessary regardless of the urge of counsel, and that we should await the result of the action by the United States Supreme Court upon the federal act which will inevitably reach said court in a short time, if not already there, then if said federal act is upheld, it will be time enough to pass upon

the Alabama act by this court. "Sufficient unto the day is the evil thereof."

It is the well-established rule of this and other courts to not pass upon the constitutional validity of legislative enactments unless the determination is necessary to a decision of the case (meaning a final and fixed decision as distinguished from a conditional or speculative one.) State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. 294, with many other cases cited. Ala. Ency.Digest, vol. 3, § 35, pp. 205, 206.

My brothers, however, are of the opinion that the question should be presently decided.

Therefore, yielding to their view, I concur in the result of the holding that the Alabama act does not violate our State Constitution. I am not convinced beyond a reasonable doubt that the act is not within the police power of the state and, if it is within said police power, the present holding does not conflict with Robertson v. Collins, 218 Ala. 54, 117 So. 415, or Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300.

My brother Foster has written an able, persuasive, and painstaking opinion, and with which I do not at present disagree, but do not wish to concur in the discussion or holding as to the federal statute for while it may be correct whatever we may say or hold as to said act in nowise settles the controversy and a decision by us is not contemplated by the Alabama act, which expressly provides that the life and validity of same must be determined by the United States Supreme Court in dealing with the federal act.

BROWN, Justice (concurring in part and in part dissenting).

I concur in the opinion of Justice FOSTER in so far as it holds that the act of Congress is not obnoxious to the due process and equal protection clause of the Fifth Amendment to the Constitution of the United States. I further concur in the opinion holding that the Alabama act, in so far as it levies a tax on employers, does not offend the said Fifth Amendment, nor the provisions of the State Constitution.

I am of the opinion, however, that the tax levied on the wages of employees, while an excise tax, is a levy on the gross income of such employees, and is offensive to Article 22 (Amendment 25) to the Constitution of 1901. The federal act designates the levy on employees as "Income Tax on Employees" (see Title VIII, 42 U. S.C.A. § 1001 et seq.). And while the Alabama act does not attempt to characterize the tax, it provides that "Each employee shall contribute to the fund one per centum of his wages. Each employer shall be responsible for withholding such contribution from the wages of his employees, shall show such deduction on his payroll records, and shall transmit all such contributions to the fund pursuant to general commission rules." Gen.Acts 1935, pp. 955, 956, § 4.

The tax on the wages of employees is bound to be an occupation tax or privilege tax, and its characterization as a nonproperty tax or "a specific tax not prohibited by the Constitution," does not differentiate it from an "income" tax as it is clearly characterized by the act of Congress. It is not an occupation tax because it is not levied on the occupation, but is directly levied by the act of Legislature on the wages—the income of the employee—and is justified on the theory, and only on that theory, that it is for the privilege of receiving and enjoying such income under government protection. Such tax is an income tax pure and simple. State v. Weil, 232 Ala. 578, 168 So. 679; People of State of New York v. Mark Graves et al., 57 S.Ct. 466, 81 L.Ed. ——, March 1, 1937.

Article 22 (Amendment 25 ), provides:

"The legislature shall have the power to levy and collect taxes *for state purposes on net incomes* from whatever source derived within this state, including the incomes derived from salaries, fees and compensation paid from the state, county, municipality, and any agency or creature thereof, for the calendar year, 1933, and thereafter and to designate and define the incomes to be taxed and to fix the rates of taxes provided that the rate shall not exceed 5 per cent nor 3 per cent on corporations. Income shall not be deemed property for purposes of ad valorem taxes.

"From net income an exemption of not less than fifteen hundred dollars ($1,500.00) shall be allowed to unmarried persons and an exemption of not less than three thousand dollars ($3,000.00) shall be allowed to the head of a family, provided that only one exemption shall be allowed to husband and wife where they are living together and make separate returns for income tax. An exemption of not less than three hundred dollars ($300.00) shall be allowed for each dependent member of the

family of an income tax payer under the age of 18 years. *The legislature shall reduce the ad valorem tax from time to time when and to such an amount as the revenue derived from the income tax will justify.* In the event the legislature levies an income tax, such tax must be levied upon the salaries, income, fees, or other compensation of state, county and municipal officers and employees, on the same basis as such income taxes are levied upon other persons. All income derived from such tax *shall be held in trust for the payment of the floating debt of Alabama until all debts due on Oct. 1st, 1932, are paid and thereafter used exclusively for the reduction of state ad valorem taxes."* Mitchie's Cumulative Supplement 1936, Code of Alabama, pp. 16, 17. (Italics supplied.) State v. Weil, 232 Ala. 578, 583, 168 So. 679.

This section, read in its entirety, clearly restricts the power of the Legislature to "levy and collect taxes *for state purposes* on net incomes from whatsoever source derived" at the constitutionally fixed rate; allowing exemptions of $1,500 from the income of single persons, and $3,000 for married persons, and $300 "for each dependent member of the family of an income tax payer under the age of 18 years. * * * All income derived from such tax shall be held in trust for the payment of the floating debt of Alabama until all debts due on Oct. 1st, 1932, are paid and thereafter used exclusively for the reduction of state ad valorem taxes."

While the Legislature had the power, prior to the adoption of said article 22 (Amendment 25) to· levy an income tax as an excise tax, said power was limited by the decision of this court in Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300; by characterizing such income tax "a property tax" within the influence of sections 214 and 217 of the Constitution.

The major purpose of the constitutional amendment, as held in State v. Weil, supra, was to overcome the effect of the decision in the Eliasberg Bros. Mercantile Co. Case, and to set up in the amendment the full scope and limits of legislative power in respect to such taxation.

Inasmuch as the majority opinion sustains the act in its entirety, it would be futile and a useless labor to determine whether or not the tax as to employees is separable and subject to be stricken so as to sustain the remainder.

However, on consideration stated, it is my opinion that the Legislature exceeded its power in attempting to tax the wages— the income—of employees without allowing the constitutional exemptions, and in devoting the levy to purposes other than prescribed by the amendment, and to this extent I dissent from the holding of the majority.