166 So. 710

**In re OPINIONS OF THE JUSTICES.**

No. 37.

Supreme Court of Alabama.

March 23, 1936.

62

In re Substitute for House Bill No. 180.

"To the Hon. Speaker and Members of the House of Representatives of Alabama, Montgomery.

Sirs:

■ While distinctions have been drawn between "revenue bills" which by section 70, Constitution, shall not be passed during the last five days of the session and bills to raise revenue (Harris v. State, 228 Ala. 100, 151 So. 858; In re Opinions of Justices, 223 Ala. 369, 136 So. 589; State ex rel..Ward v. Henry, 224 Ala. 224 [18], 139 So. 278; State ex rel. Franklin County v. Hester, 224 Ala. 460, 140 So. 744; Woco Pep Co. v. Butler, 225 Ala. 256, 142 So. 509; Southern Ry. Co. v. Mitchell, 139 Ala. 629, 37 So. 85), we do not think that the first feature of the Governor's call, dated February 8, 1936, should be construed to limit the Legislature to "revenue bills" as thus described; but that it also includes a bill whose main purpose is to raise revenue. But, when the main purpose is as described in section 1 of the substitute for House Bill 180, referred to in your inquiry, it is clear that raising revenue is merely incidental to the purpose there defined. Kennamer v. State, 150 Ala. 74, 43 So. 482; 54 Corpus Juris, 744.

■ An incidental provision by which revenue is raised cannot be sufficient to come within the Governor's call, when the bill has a larger purpose and is intended to provide for the general welfare of the people within the police power of the Legislature. Especially is this true when the whole policy of the state toward an important police regulation is changed before there can be provision for revenue in that respect. The Governor's call gave no notice that such was intended. We think it is not within the call.

We note you also inquire whether the act will be in violation of the Constitution for that it shall not become operative until the referendum there provided shall be had and result in favor of its approval.

■ In this respect we have often held that, when an act is complete in itself, it can be made to depend upon some contingency for its operation to become effective. In re Opinions of the Justices, 227 Ala. 291, 149 So. 776; Porter Coal Co. v. Davis (Ala.Sup.) 165 So. 93;[1] Ward v. State, 154 Ala. 227, 45 So. 655; Ex parte Hall, 156 Ala. 642, 47 So. 199; McNiell v. Sparkman, 184 Ala. 96, 63 So. 977. And it has been applied so as to make the operation of liquor laws in the respective counties dependent upon elections provided by the Legislature. State ex rel. Crumpton v. Montgomery, 177 Ala. 212–226, 59 So. 294.

Chief Justice Cooley, in his work on Constitutional Limitations (8th Ed.) pp. 238, 239, says: "If it is not unconstitutional to delegate to a single locality the power to decide whether it will be governed by a particular charter, must it nor quite as clearly be within the power of the legislature to refer to the people at large, from whom all power is derived, the decision upon any proposed statute affecting the whole State? And can that be called a delegation of power which consists only in the agent or trustee referring back to the principal the final decision in a case where the principal is the party concerned, and where perhaps there are questions of policy and propriety involved which no authority can decide so satisfactorily and so conclusively as the principal to whom they are referred?"

He then says that, if the decision of the question is to depend upon the weight of judicial authority, it would be against the power to submit the question to the vote of the whole state. He proceeds to give the views of both sides of the question. Perhaps more states have followed Barto v. Himrod (1853) 8 N.Y. 483, 59 Am.Dec. 506, than have taken a different view as shown by Judge Cooley and the notes in 76 A.L.R. 1054 et seq.

[1] 231 Ala. 359.

But the opinion of some of the most eminent jurists of this country who have written the law for their states have not followed the reasoning of the New York case. Particular attention in this respect is called to the case of Hudspeth v. Swayze, 85 N.J.Law, 592, 89 A. 780, 784, Ann.Cas.1916A, 102, in which many of the cases which do not agree with the New York court are referred to and the reasons noted. Quoting from the case of State v. Parker, 26 Vt. 357, that opinion approves this language: "After a full examination of the arguments by which it is attempted to be maintained that statutes made dependent upon such contingencies are not valid laws, and a good deal of study and reflection, I must declare that I am fully convinced, although at first, without much examination, somewhat inclined to the same opinion, that the opinion is the result of false analogies, and so founded upon a latent fallacy. It seems to me that the distinction attempted between the contingency of a popular vote and other future uncertainties is without all just foundation in sound policy or sound reasoning, and that it has too often been made more from necessity than choice, rather to escape from an overwhelming analogy than from any obvious difference in principle in the two classes of cases."

And the following is taken from Smith v. Janesville, 26 Wis. 291: "It being conceded that the legislature possesses this general power, the only question here would seem to be, whether a vote of the people in favor of a law is to be excluded from the number of those future contingent events upon which it may be provided that it shall take effect. A similar question was before this court in a late case (State ex rel. Attorney General v. O'Neill [1869] 24 Wis. 149), and was very elaborately discussed. We came unanimously to the conclusion in that case, that a provision for a vote of the electors of the city of Milwaukee in favor of an act of the legislature, before it should take effect, was a lawful contingency, and that the act was valid. That was a law affecting the people of Milwaukee particularly, while this was one affecting the people of the whole state. There the law was submitted to the voters of that city, and here it was submitted to those of the state at large. What is the difference between the two cases? It is manifest, on principle,

that there cannot be any. The whole reasoning of that case goes to show that this act must be valid; and so it has been held in the best considered cases, as will be seen by reference to that opinion. We are constrained to hold, therefore, that this act is and was in all respects valid from the time it took effect, in November, 1866; and consequently that there was no want of authority for the levy and collection of the taxes in question."

The New Jersey opinion also quotes from Judge Holmes in a dissenting opinion for Massachusetts (Opinion of the Justices, 160 Mass. 586, 36 N.E. 488, 23 L.R.A. 113), where the result was a three to two holding against his reasoning as follows: "I admit that the Constitution establishes a representative government, not a pure democracy. It establishes a general court * * * which is to be the lawmaking power. But the question is whether it puts a limit upon the power of that body to make laws. In my opinion the Legislature has the whole lawmaking power, except so far as the words of the Constitution expressly or impliedly withhold it, and I think that in construing the Constitution we should remember that it is a frame of government for men of opposite opinions and for the future, and therefore not hastily import into it our own views, or unexpressed limitations derived merely from the practice of the past. I ask myself, as the only question: What words express or imply that a power to pass a law subject to rejection by the people is withheld? I find none which do so. The question is not whether the people of their own motion could pass a law without any act of the Legislature. That, no doubt, whether valid or not, would be outside the Constitution. So, perhaps, might be a statute purporting to confer the power of making laws upon them. But the question, put in a form to raise the fewest technical objections, is whether an act of the Legislature is made unconstitutional by a proviso that, if rejected by the people, it shall not go into effect. If it does go into effect, it does so by the express enactment of the representative body. I see no evidence in the instrument that this question ever occurred to the framers of the Constitution. It is but a short step further to say that the Constitution does not forbid such a law. I agree that the discretion of the Legislature is intended to be exercised. I agree that con-

fidence is put in it as an agent. But I think that so much confidence is put in it that it is allowed to exercise its discretion by taking the opinion of its principal if it thinks that course to be wise. It has been asked whether the Legislature could pass an act subject to the approval of a single man. I am not clear that it could not. The objection, if sound, would seem to have equal force against all forms of local option. But I will consider the question when it arises. The difference is plain between that case and one where the approval required is that of the sovereign body. The contrary view seems to me an echo of Hobbes's theory that the surrender of sovereignty by the people was final. I notice that the case from which most of the reasoning against the power of the Legislature has been taken by later decisions states that theory in language which almost is borrowed from the Leviathan. Rice v. Foster [1847] 4 Har.(Del.) 479, 488. Hobbes urged his notion in the interest of the absolute power of King Charles I, and one of the objects of the Constitution of Massachusetts was to deny it. [I answer the first question, 'Yes.'] I may add that, while the tendency of judicial decision seems to be in the other direction, such able judges as Chief Justices Parker of Massachusetts, Dixon of Wisconsin, Redfield of Vermont, and Cooley of Michigan have expressed opinions like mine."

Those quotations give the argument opposed to the New York case, and we think it needs no elaboration, but is complete and sound. It is the view adopted in the following states: North Carolina, Manly v. Raleigh, 57 N.C. 370; Cottrell v. Lenoir, 173 N.C. 138, 91 S.E. 827; New Jersey, Hudspeth v. Swayze, supra; Vermont, State v. Parker, supra; State v. Scampini, 77 Vt. 92, 59 A. 201; Wisconsin, Smith v. Janesville, supra; State v. Frear, 142 Wis. 320, 125 N.W. 961, 20 Ann.Cas. 633; State v. Johnson, 170 Wis. 218, 175 N.W. 589, 7 A.L.R. 1617.

It is true that the majority of the states have held that the Legislature cannot submit to the electorate of a state as a whole the question of when or whether a statute properly enacted and complete within itself will be operative.

But we have leaned to the view that such legislation does not offend our Constitution when there is nothing in it to show a limitation on that right.

■ In respect to the income tax law, while it was not made dependent upon a vote on the act itself, it was dependent upon a proposal to amend the Constitution voted on by the voters of the state. In re Opinions of the Justices, supra. And the operation of a law in a county or city may be left to a vote in that county or city. State ex rel. v. Montgomery, supra; Ward v. State, supra; Ex parte Hall, supra.

The Legislature is justified in assuming that we will apply the principles to such acts as here considered, in view of our former cases.

■ We think, therefore, that the proposed substitute to House Bill 180 is not in violation of the Constitution on account of its referendum feature.

Tax measures are thought by us to be differentiated as discussed in answer to your inquiry to House Bill 21.

We think that, though not directly mentioned in your resolution, attention should be called to the omission to mention the referendum in the title of the act; but we express no opinion as to the effect of not doing so.

Respectfully submitted,
JOHN C. ANDERSON,
Chief Justice.
WILLIAM H. THOMAS,
A. B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.

To the Hon. Speaker and Members of the House of Representatives of Alabama, Montgomery.
Sirs:

We are in accord with the foregoing views of the majority of the Justices with the one exception as to the referendum feature of the bill in question, an exception, however, which we feel is fundamental.

It is our opinion, in accord with the weight of authority elsewhere (People v. Barnett, 344 Ill. 62, 176 N.E. 108, 76 A. L.R. 1044, and note), and we think also in accord with sound reasoning as well, that the referendum embraced in this bill is a delegation by the Legislature of the law-making power conferred upon that body by the people in the adoption of our Constitution, and that such delegation is therefore in conflict with the Constitution, and subversive of our representative form of government. Or, as otherwise expressed

by the Tennessee court (Wright v. Cunningham, 115 Tenn. 445, 91 S.W. 293, 298), granted such delegation of power, "representative constitutional government would be destroyed." If the people wish to establish what is known as a "pure democracy," as contrasted with our present representative form of government, the way is open by constitutional amendment to that end. But until that is done we think the proper interpretation of our present Constitution forbids legislation of this character.

Our views are more fully expressed in the response made to your inquiry as to House Bill 21, and which response is here adopted as a part hereof.

Respectfully submitted,
LUCIEN D. GARDNER,
VIRGIL BOULDIN,
JOEL B. BROWN,
Associate Justices.

