To the Honorable Members of the House of Representatives of Alabama
The State House
Montgomery, Alabama
Dear Representatives:
We are in receipt of House Resolution 434, which reads:
“HR 434 REQUESTING ADVISORY OPINION OF THE SUPREME COURT.
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE ALABAMA LEGISLATURE, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court, or a majority of them, to give this body their written opinions on the following important constitutional questions which have arisen concerning the pending bill HB 713, copies of which are attached to this resolution and made a part hereof by reference.
“1. HB 713 imposes certain environmental protection fees upon motor fuels and provides that such fees shall be held in a revolving trust fund. Do the provisions of HB 713 which prescribe the manner in which monies from this trust fund shall be expended violate the provisions of Amendment 93 or any other provision of the Constitution of Alabama 1901?
“2. Is HB 713 a revenue raising measure which should not be passed during the last five days of the legislative session under Article IV, Section 70 of the Constitution of Alabama 1901?
“RESOLVED FURTHER, That the Clerk of the House is hereby directed to send sufficient true copies of said pending bill to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court forthwith upon adoption of this resolution.”
House Resolution 434 requests this Court's opinion regarding whether House Bill 713 violates the provisions of Amendment 93 of the Constitution of 1901 and whether House Bill 713 is a revenue bill which should not be passed during the last five days of the legislative session under Article IV, Section 70, of the Alabama Con *506 stitution of 1901. House Bill 434 reads as follows:
“A BILL
“TO BE ENTITLED
“AN ACT
“To establish the Alabama Groundwater Protection Trust Fund; to provide for a disposition of the environmental protection fees collected for returning polluted groundwater to a quality comparable to its previous state; to establish an advisory board to advise the Department of Environmental Management on the investment of the fund, and other related matters; to create an incentive program through a two-year grace period to encourage the reporting and cleanup of leaking underground storage tanks; to establish and satisfy financial responsibility requirements for underground storage tank owners as required by federal law; to provide for payment of third party claims and cleanup costs caused by leaking underground storage tanks; to provide for an insurance pool for those unable to secure cleanup and/or liability insurance, and to provide for disposition of the Fund.
“The legislature of the State of Alabama finds and declares that certain lands of Alabama constitute unique and delicately balanced resources; that the protection of these resources is vital to the economy of this state; and that the preservation of groundwater is a matter of the highest urgency and priority as these waters provide a primary source of potable water in this state; that such use can only be served effectively by maintaining the quality of groundwater in as close to a pristine condition as possible, taking into account multiple use accommodations necessary to provide the broadest possible promotion of public and private interests.
“The legislature further finds and declares that the storage and transportation of motor fuels within the jurisdiction of this state poses [sic] threats of damage to the environment of the state, to citizens of the state, and to other interests deriving livelihood from the state; and that such hazards have occurred in the past, are now occurring, and will continue to occur. Discharges from underground tanks pose a significant threat to the quality of ground-waters of this state.
“The legislature further finds that where contamination of groundwater has occurred, remedial measures have often been delayed for long periods while determinations as to liability and the extent of liability are made; that such delays result in the continuation and intensification of the threat to the public health, safety, and welfare, in greater damages to the environment, and in significantly higher costs to contain and remove the contamination; and that adequate financial resources must be readily available to provide for the expeditious supply of safe and reliable alternative sources of potable water to affected persons and to provide a means for investigation and cleanup at contamination sites without delay.
“The legislature intends for this Act to provide evidence of financial responsibility under the Superfund Amendments and Reauthorization Act of 1986 and other federal laws.
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. This act may be cited as the ‘Alabama Groundwater Protection Trust Fund Act.’
“Section 2. For the purposes of this act, unless otherwise indicated, the following terms shall have the meanings respectively ascribed to them by this section:
“(a) ‘Commission’ means the Alabama Environmental Management Commission.
“(b) ‘Department’ means the Alabama Department of Environmental Management.
“(c) ‘Director’ means the Director of the Alabama Department of Environmental Management.
“(d) ‘Groundwater’ means water located beneath the land surface located wholly or partially within the boundaries of the state.
“(e) ‘Owner of An Underground Storage Tank’ means:
*507 “(1) in the case of any underground storage tank in use on the date of enactment of this act, or brought into use after that date, any person who owns an underground storage tank used for the storage, use, or dispensing of motor fuels, and
“(2) in the case of an underground storage tank in use before the date of enactment of this act, but no longer in use on the date of enactment of this act, any person who owned such tank immediately before the discontinuation of its use, and
“(3) any person who operates an underground storage tank used for the storage, use or dispensing of motor fuels.
“(f) ‘Person’ means any natural person, any firm, association, partnership, corporation, trust, the state and any agency of the state, governmental entity, the United States and any agency of the United States, a consortium, a joint venture, a commercial entity and any other legal entity.
“(g) ‘Motor Fuels’ shall be defined as all grades of gasoline including gasohol, number 1 diesel, number 2 diesel, kerosene and all aviation fuels.
“(h) ‘Underground storage tanks’ means any one or combination of tanks (including pipes connected thereto) used to contain an accumulation of motor fuels, and the volume of which (including the volume of the underground pipes connected thereto) is ten percent or more beneath the surface of the ground. Such term does not include any:
“(1) Farm or residential tank of 1,100 gallons or less capacity used for storing motor fuel for noncommercial purposes;
“(2) Tank used for storing heating oil for consumptive use on the premises where stored;
“(3) Septic tank;
“(4) Pipeline facility (including gathering lines) regulated under:
“(a) The Natural Gas Pipeline Safety Act of 1968,
“(b) The Hazardous Liquid Pipeline Safety Act of 1979, and
“(c) An interstate pipeline facility regulated under state laws comparable to the provisions of law in clauses a or b of this subparagraph;
“(5) Surface impoundment, pit, pond or lagoon;
“(6) Stormwater or wastewater collection system;
“(7) Flow-through process tank;
“(8) Liquid trap or associated gathering lines directly related to oil or gas production and gathering operations;
“(9) Storage tank situated in an underground area (such as basement, cellar, mineworking, drift, shaft, or tunnel) if the storage tank is situated upon or above the surface of the floor; and
“(10) Other tanks exempted by the Administrator of the Federal Environmental Protection Agency.
“(i) ‘Third Party Claim’ means any civil action brought or asserted by any person against any Owner of any underground storage tank for damages to person or property which damages are the direct result of the contamination of groundwater by motor fuels.
“(j) ‘Response Action’ means any activity, including evaluation, planning, design, engineering, construction, and ancillary services, which is carried out in response to any discharge, release, or threatened release of motor fuels.
“(k) ‘Response Action Contractor’ means a person who has been approved by the Department acting through the Commission and is carrying out any response action, including a person retained or hired by such person to provide services relating to a response action.
“(I) ‘Substantial Compliance’ shall mean that an owner or operator of an underground storage tank has registered that tank with the Department, and has made a good faith effort to comply with the State and Federal laws applicable to underground storage tanks, and the rules and regulations adopted pursuant thereto.
“Section 3. There is hereby created the Alabama Groundwater Protection Trust *508 Fund, hereinafter referred to as the ‘Fund’ to be administered by the Secretary-Treasurer of the Retirement Systems of Alabama. This Fund shall be used by the Department as a revolving fund for carrying out the purposes of this act. To this fund shall be credited all environmental protection fee revenues levied, collected and credited pursuant to the act less the costs of administration by the Department of Revenue. Charges against the Fund shall be made in accordance with the provisions of this act.
“(a) Whenever in the Directors’ determination incidents of underground water contamination related to the storage of motor fuels may pose a threat to the environment or the public health, safety or welfare, and the owner or operator of the underground storage tank has been found to be in substantial compliance, the Department shall obligate monies available in the fund to provide for:
“(1) investigation and assessment of contamination sites;
“(2) the interim replacement and permanent restoration of potable water supplies;
“(3) rehabilitation of contamination sites, which may consist of cleanup of affected soil, groundwater, and inland surface waters, using cost effective alternatives that are technologically feasible and reliable, and that provide adequate protection of the public health, safety and welfare and minimize environmental damage, in accordance with the site selection and cleanup criteria established by the Department, except that nothing herein shall be construed to authorize the Department to obligate funds for payment of costs which may be associated with, but are not integral to, site rehabilitation, such as the cost for retrofitting or replacing underground storage tanks.
“(b) Whenever costs have been incurred by the Department for taking corrective action or enforcement action with respect to the release of motor fuels from an underground storage tank, or the Department has expended funds from the Fund created by this act, the owner of the underground storage tank shall be liable to the Department for such costs only if the owner was not in substantial compliance on the date of discharge of the motor fuels which necessitates the cleanup.
“Section 4. (a) There is hereby levied an environmental protection fee of two tenths of one cent ($.002) per gallon upon motor fuels as defined in this act. The environmental protection fee provided for in this act shall be imposed only once and collected by the Department of Revenue, Miscellaneous Tax Division, at the same time and in the same manner as taxes imposed and collected under Article 1 and Article 2 of Chapter 17 of the Code of Alabama 1975 except that Section 40-17-13 and Section 40-17-31(c) shall not apply. The fee imposed herein shall be immediately transferred by the State Treasurer to the Employees Retirement System of Alabama to the credit of the ‘Alabama Groundwater Protection Trust Fund’ to be invested under the same guidelines and policies of said system. The Department of Revenue is authorized to charge such trust fund an administrative fee for collecting the environmental fee set forth herein which shall not exceed .005 (one-half of one percent) of the total sum collected.
“(b) The proceeds from this environmental protection fee shall be deposited into the Alabama Groundwater Protection Trust Fund established in Section 3 of this Act until the unobligated balance in the Fund shall reach ten million dollars ($10,000,-000.00), at which time the fee shall abate until such time as the fund balance shall be reduced to seven and one-half million dollars ($7,500,000.00), at which point the fee shall again be imposed at the rate of one tenth of one cent ($.001) per gallon until such time as the fund shall reach ten million dollars ($10,000,000.00). An annual fee not to exceed $350,000.00 will be withdrawn for the use of the Department for administering the actions under this Fund. This sum shall be paid from the fund upon request by the Director.
“(c) This Fund shall be used for the purposes set forth in this act and for no other governmental purposes, nor shall any portion hereof ever be available to borrow from by any branch of government; it be *509 ing the intent of the Legislature that this Fund and its increments shall remain intact and inviolate. Any interest or earnings on the Fund shall be credited only to the Fund.
“(d) Monies held in the Fund established under the act shall be disbursed for the following purposes:
“(1) Payments shall be made to any third party who brings a third party claim against any owner of an underground storage tank and who obtains a final judgment in said action enforceable in this state against the owner after the first $300,-000.00 has been paid by that owner or those acting for the owner.
“(2) Payments shall be made in reasonable amounts to approved response action contractors or for reimbursement of payment to approved response action contractors.
“(e) Payments from the Fund may be obtained by following the within procedure:
“(1) Under Section 4(d)(1) by filing an application with the Department attaching the original or a certified copy of the final judgment, together with proof of payment of the first $300,000.00.
“(2) Under Section 4(d)(2) by filing a sworn application with the Department indicating the fair and reasonable value of the costs of site rehabilitation, subject to those regulations and limitations as set by the Department.
“(f) Nothing in this act shall establish or create any liability or responsibility on the part of the Department or the State of Alabama to pay any cleanup costs or third party claims from any other source than the fund created by this act, nor shall the Department or the State of Alabama have any liability or responsibility to make any payments for cleanup costs or third party claims if the fund created herein is insufficient to do so.
“(g) No third party may be paid from the fund created herein, more than $500,000.00 per occurrence, for any third party claim, and none of this shall be paid until the first $300,000.00 has been paid as provided herein.
“(h) The Secretary-Treasurer of the Employees Retirement System of Alabama shall establish audit procedures for the conduct of an annual independent audit of the Trust Fund. Such funds necessary to perform the audit shall be authorized from the Trust Fund.
“Section 5. There is hereby created an Alabama Groundwater Protection Advisory Board (the ‘Board’) comprised of a representative from each of the following organizations: (1) the Alabama Oilmen’s Association; (2) the Alabama Service Station Association; (3) the Petroleum Equipment Institute; (4) the Alabama Department of Environmental Management; (5) the Secretary-Treasurer of the Retirement Systems of Alabama, and (6) the Alabama Petroleum Council. Each representative, or the designee of such representative, may attend meetings of the Board, and each such representative, or designee, shall have one vote concerning any matter coming before the Board. The Board shall elect its own chairman. The Board shall meet at least twice annually, and may meet at any other time upon fifteen (15) days’ notice from the Director or any two of the Board’s other members. The Board will advise the Department on issues involving implementation of the act, including investment of the Fund, reductions of the Fund ceiling, if after a reasonable length of time this would be deemed appropriate together with reduction of administrative fees associated therewith; the role of the Fund in establishing financial responsibility as required by federal law, examination of claims made and loss experience, including recommendations to the Commission for minimum levels of financial responsibility for underground storage tank owners, the necessity for, and contents of, rules and regulations issued under the act, and similar matters. The Board shall recommend standards for the qualification of response action contractors as defined herein, and shall submit a proposed list of response action contractors to the Commission for approval. The Board may recommend at any time that response action contractors be added to or deleted from the list.
*510 “Section 6. To encourage early detection, reporting and cleanup of contamination from leaking underground tanks the Department shall within the guidelines established in this section, conduct an incentive program which shall provide for a twenty-four (24) month general grace period beginning on the date of the passage of this act and ending two years thereafter. Pursuant thereto the Department may establish requirements for the written reporting of motor fuel contamination incidents. All sites involving incidents of contamination from underground storage tanks reported to the Department any time from midnight on the date of passage shall be qualified sites for the expenditure of funds from the Alabama Groundwater Protection Trust Fund created by this act, provided that written report is filed with respect thereto. Any funds so expended shall be absorbed at the expense of the Fund without recourse to reimbursement or recovery from any underground storage tank owner, subject to the following exceptions:
“(a) The provisions of this section shall not apply to any site where the Department has initiated any administrative or civil enforcement action prior to the passage of this act.
“(b) The provisions of this section shall not apply to any site where the Department has been denied site access to implement the provisions of this act.
“(c) The provisions of this section shall not be construed to authorize or require reimbursement from the Fund for costs expended prior to the passage of this act.
“(d) Notwithstanding the grace period set forth above, nothing contained herein shall relieve any person from compliance with any state or federal laws or regulations applicable to underground storage tanks.
“Section 7. (a) At the end of the two year grace period set forth in Section 6 of this act, the Commission shall establish minimum financial responsibility requirements for taking corrective action by underground tank owners, but in no event shall the requirements exceed $100,000.00 per occurrence for cleanup costs or $300,-000.00 per occurrence for third party claims. The Commission shall review the minimum financial responsibility requirements on an annual basis and may adjust the minimum requirements within the limits set herein.
“(b) Financial responsibility may be established by any one or combination of the following: insurance, guarantee, surety bond, letter of credit or qualification as a self-insurer. A person may qualify as a self-insurer by showing tangible net worth in the amount required by the Commission under Section 7(a).
“(c) This act creates an assigned risk insurance plan to be established by the Commissioner of Insurance for underground petroleum storage tank owners and operators who are unable to obtain insurance or cannot demonstrate financial responsibility of $100,000.00 cleanup liability limit and the $300,000.00 third party damage liability limit. After consultation with insurance companies authorized to issue liability policies in this state, the Commissioner of Insurance shall approve a reasonable plan or plans for the equitable apportionment among such companies of applicants for such policies and for underground storage tank pollution liability policies who are in good faith entitled to but are unable to procure such policies through ordinary methods. When any such plan has been approved, all such insurance companies shall subscribe thereto and participate therein. Any applicant for any such policy, any person insured under any such plan and any insurance company affected may appeal to the Commissioner of Insurance from any ruling or decision of the manager or committee designated to operate such plan. Any person aggrieved hereunder by any order or act of the Commissioner of Insurance may, within 10 days after notice thereof, file a petition in the circuit court of Montgomery County, Alabama for a review thereof. The court shall summarily hear the petition and may enter any appropriate order or judgment.
“Section 8. Nothing in this act shall be deemed to prohibit a person from conducting site rehabilitation through approved response action contractors.
*511 “(a) The legislature finds that in order to provide for the expeditious rehabilitation of contamination sites, voluntary rehabilitation of contamination sites should be encouraged, provided that such rehabilitation is conducted in a manner and to a level of completion which will protect the public health, safety, and welfare and will minimize damage to the environment. To accomplish this purpose, the Department, acting through the Commission, shall promulgate rules and regulations for the approval and compensation of response action contractors or through the use of their own personnel. Nothing in this act shall be construed as a State contract but to the contrary, it is expressly manifest that these are not State contracts and are not subject to any competitive bid laws.
“Section 9. Upon the termination of the Fund, or upon a decision to reduce the principal to be maintained in the Fund, the proceeds shall be deposited and used as the funds are used under the State Road and Bridge Fund now in force.
“Section 10. Rules and regulations pertaining to this act shall be adopted in accordance with applicable state and federal laws.
“Section 11. The provisions of this act are severable. If any part of the act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
“Section 12. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.”
Our opinion is that H.B. 713, which imposes certain environmental protection fees upon motor fuels to be used to provide environmental protections for polluted groundwater, violates Amendment 93 to the Constitution of Alabama 1901, as amended by Amendment 354 of the Constitution of Alabama 1901. The answer to your question regarding whether H.B. 713 violates Amendment 93, as amended by Amendment 354, is therefore in the affirmative.
Amendment 354 of the Constitution of Alabama 1901 provides as follows:
“Amendment XCIII [93] to the Constitution of Alabama, as submitted November 4, 1952, and proclaimed ratified November 19, 1952, shall be amended so that said Amendment XCIII [93], shall read as follows:
“No moneys derived from any fees, excises, or license taxes, levied by the state, relating to registration, operation, or use of vehicles upon the public highways except a vehicle-use tax imposed in lieu of a sales tax, and no moneys derived from any fee, excises, or license taxes, levied by the State, relating to fuels used for propelling such vehicles except pump taxes, shall be expended for other than cost of administering such laws, statutory refunds and adjustments allowed therein, cost of construction, reconstruction, maintenance and repair of public highways and bridges, costs of highway rights-of-way, payment of highway obligations, the cost of traffic regulation and the expense of enforcing state traffic and motor vehicle laws. The provisions of this amendment shall not apply to any such fees, excises, or license taxes now levied by the state for school purposes for this whole state or for any county or city board of education therein; and the legislature may provide for the manufacture, distribution and use on private passenger or pleasure motor vehicles of personalized license plates or tags, bearing some special letters, figures, mark or badge of distinction or personal prestige in lieu of the regular license plates or tags, and if it does so, the legislature must also require that such tags may be procured only by payment of a fee or charge, in addition to the regular fee, excise or license tax for the registration, operation or use of such motor vehicles upon the highways. The moneys derived from the additional charge made for such special or distinctive license plates or tags in excess of the cost of the manufacture and distribution of such plates or tags, may be used in such manner as the legislature prescribes.”
This amendment states that no moneys derived from any fees, excises, or license *512 taxes relating to fuels shall be expended for “other than cost of administering such laws, statutory refunds ... cost of construction, reconstruction, maintenance and repair of public highways and bridges, costs of highway rights-of-way, payment of highway obligations, the cost of traffic regulation, and the expense of enforcing state traffic and motor vehicle laws.”
H.B. 713 would impose certain fees (two tenths of one cent ($.002) per gallon) upon motor fuels, which fees would be held in a revolving trust fund. The bill would establish the Alabama Groundwater Protection Trust Fund, which would provide for a disposition of the environmental protection fees collected for returning polluted groundwater to a quality comparable to its previous state. It also would create an incentive program to encourage the reporting and cleanup of leaking underground storage tanks, and it would establish and satisfy financial responsibility requirements for underground storage tanks as required by federal law.
It is clear that H.B. 713 would violate Amendment 354, because it imposes a fee on motor fuels to protect Alabama’s groundwater. Amendment 354 does not permit the imposition of a fee on motor fuels except for in very limited circumstances set forth in the amendment itself, and protection of groundwater is not one of these circumstances, even if the groundwater is harmed by the leakage of motor fuels from underground tanks. Based on the foregoing, we are of the opinion that H.B. 713 would violate Amendment 354 of the Constitution of Alabama 1901.
Our opinion, with regard to the second question, is that H.B. 713 does not violate Article IV, Section 70, of the Constitution of Alabama 1901. The answer to your question regarding whether H.B. 713 violates Article IV, Section 70, is therefore in the negative.
Article IV, Section 70, of the Constitution of Alabama 1901, provides as follows:
“All bills for raising revenue shall originate in the house of representatives. The governor, auditor, and attorney-general shall, before each regular session of the legislature, prepare a general revenue bill to be submitted to the legislature, for its information, and the secretary of state shall have printed for the use of the legislature a sufficient number of copies of the bill so prepared, which the governor shall transmit to the house of representatives as soon as organized, to be used or dealt with as that house may elect. The senate may propose amendments to revenue bills. No revenue bill shall be passed during the last five days of the session.”
We are of the opinion that H.B. 713 is not a “revenue bill” which should not be passed during the last five days of the legislative session. This Court has considered this question on several occasions. In Opinion of the Justices No. IS, 223 Ala. 369, 136 So. 589 (1931), the Chief Justice and Associate Justices opined that an act imposing a gasoline tax was not a “revenue bill.” In reaching this conclusion, the Justices opined:
“The provison of section 70 of our Constitution, saying: ‘No revenue bill shall be passed during the last five days of the session,’ was construed in Kennamer v. State, 150 Ala. 74, 43 So. 482 [(1907)]. That case involved the provisions of a local road law levying a privilege tax on vehicles for the construction and maintenance of public roads.
“This levy was sustained upon the ground that the purpose was not simply to raise revenue, but to require those deriving a special benefit from the use of the roads, and imposing a special burden in the mainenance of same, to pay a reasonable sum for the privilege, the proceeds to be devoted to road purposes.
“The construction and maintenance of highways is referable to the police power of the state in promoting the public convenience and welfare.
“The Kennamer Case is authority for the view that legislation to that end, and not for revenue merely, is not a ‘revenue bill’ within the quoted clause of section 70.
“An excise tax on motor fuels is levied for like reasons as the vehicle tax considered in the Kennamer Case; namely, special burdens for special benefits.”
*513 223 Ala. at 370, 136 So. at 590. The Justices also stated in Opinion of the Justices No. 37, 232 Ala. 60, 166 So. 710 (1936):
“[W]hen the main purpose is as described in section 1 of the substitute for House Bill 180, referred to in your inquiry, it is clear that raising revenue is merely incidental to the purpose there defined. Kennamer v. State, 150 Ala. 74, 43 So. 482 [ (1907) ]; 54 Corpus Juris, 744.”
232 Ala. at 62, 166 So. at 712.
H.B. 713’s primary purpose is to provide for a disposition of the fees collected for returning polluted groundwater to a quality comparable to its previous state. The purpose of the act is not simply to raise revenue but to provide certain environmental protections regarding polluted groundwater. It is clear that raising revenue is merely incidental to the purpose defined in the act; therefore, based upon the law of this state, as expressed in opinions of this Court, we are of the opinion that H.B. 713 is not a “revenue bill” and may, therefore, be passed during the last five days of the legislative session.
Respectfully submitted,
C.C. TORBERT, Jr. Chief Justice HUGH MADDOX RENEAU P. ALMON JANIE L. SHORES SAM A. BEATTY OSCAR W. ADAMS, Jr. GORMAN HOUSTON HENRY B. STEAGALL, II JUSTICES